UNITED STATES of America, Appellee,

v.

Amadou CONDE, aka Fode Marega, Defendant–Appellant.

No. 98–1364.

United States Court of Appeals, Second Circuit.

Argued April 21, 1999.

Decided June 2, 1999.

Meir Feder, Assistant United States Attorney, New York, New York (Mary Jo White, United States Attorney for the Southern District of New York, Geoffrey R. Kaiser, Lewis J. Liman, Assistant United States Attorneys, New York, New York, on the brief), for Appellee.

Georgia J. Hinde, New York, New York, for Defendant–Appellant.

Before: KEARSE, McLAUGHLIN, and CALABRESI, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Amadou Conde appeals from a judgment entered in the United States District Court for the Southern District of New York following his plea of guilty before Kimba M. Wood, *Judge,* convicting him of conspiracy to distribute and to possess with intent to distribute heroin, in violation of 21 U.S.C. § 846 (1994), and sentencing him principally to the statutory mandatory minimum term of 60 months' imprisonment, to be followed by a five-year term of supervised release. On appeal, Conde contends that because the court granted a three-step reduction in his Sentencing Guidelines ("Guidelines") offense level on account of his acceptance of responsibility pursuant to Guidelines § 3E1.1, he was also entitled to be sen-

tenced below the statutory minimum pursuant to the "safety valve" provided in 18 U.S.C. § 3553(f) (1994) and Guidelines § 5C1.2. We disagree and affirm the judgment.

## I. BACKGROUND

Following an attempt by Conde, Daouda Kouyate, and Mamy Kante to sell approximately 400 grams of heroin to an undercover law enforcement agent, the three men were indicted on a charge of conspiracy to distribute more than 100 grams of heroin, for which the statutory mandatory minimum prison term was 60 months, see 21 U.S.C. §§ 846, 841(b)(1)(B) (1994). Conde entered a plea of guilty pursuant to a written agreement with the government ("Plea Agreement" or "Agreement"), in which the parties stipulated, inter alia, that although the range of imprisonment prescribed by the Guidelines appeared to be 46–57 months,

> absent relief from the statutory minimum sentence, the defendant's sentence would be at least 60 months, pursuant to Section 5G1.1(b) of the Sentencing Guidelines. The defendant reserves the right to request the Court to impose sentence without regard to the statutory minimum sentence pursuant to Title 18, United States Code, Section 3553(f). The Government reserves the right to recommend that the Court not afford defendant such relief if it concludes defendant does not meet the statutory criteria.

(Plea Agreement at 2, ¶ C.) The Agreement also provided that

> [w]ith a plea allocution acceptable to the Court, the defendant will have demonstrated an acceptance of responsibility for his offense and will have assisted the prosecution of his case by timely notifying the government of his intention to enter a plea of guilty, pursuant to Sentencing Guidelines §§ 3E1.1(a) and (b), resulting in a decrease of 3 levels in the offense level.

(Plea Agreement at 2, ¶ A.2.) The Agreement noted that the parties' stipulations as to sentencing were not binding on the district court.

The statutory criteria for a safety-valve reduction under § 3553(f) include the defendant's giving the government all of the information he has about his offense. At the beginning of Conde's plea hearing, held on the day the Plea Agreement was signed, the Assistant United States Attorney ("AUSA") alerted the court that the parties disagreed as to Conde's eligibility for the safety-valve reduction. The AUSA stated there would need to be a *Fatico* hearing to resolve the issue of whether Conde had told the government the whole truth about his involvement in the crime, and in particular whether he was the supplier of the heroin in question. In his ensuing plea allocution, Conde admitted that he had intentionally and knowingly agreed with others to distribute and possess with intent to distribute more than 100 grams of heroin. He described his role only as that of driver for Kouyate; he stated that he had not known the quantity of drugs involved or the amount of money he would be paid.

At the subsequent *Fatico* hearing, Kouyate testified that Conde was the supplier of the heroin that Kouyate and Kante had been planning to sell. Testifying pursuant to a cooperation agreement, Kouyate detailed his relationship to Conde and Kante and the efforts of the three men to sell the heroin to the undercover agent. On each occasion when Kouyate was informed that the undercover agent was ready to make the purchase, Kouyate called or attempted to call Conde. On one occasion, no one answered Conde's telephone, and the sale was not made. On another occasion, Conde stated that he had other things to do, and (in the words of Conde's then-attorney Martin Geduldig arguing to the district court) "[t]he whole deal falls apart because Amadou Conde is not around" (Hearing Transcript, June 18, 1998 ("Tr."), 103). On the final try, which culminated in

the arrests, Conde drove the vehicle in which the heroin was brought to the meeting place.

The government also presented testimony by a United States Drug Enforcement Administration ("DEA") special agent who had analyzed telephone records of calls among Conde, Kouyate, and Kante, and had obtained information from the undercover agent to whom Kouyate and Kante had planned to sell the heroin. According to the undercover agent, Kouyate told the undercover agent in connection with the earliest attempt that Kouyate was going to call his source to determine whether the heroin was available; the DEA agent testified that the telephone records showed that promptly after making that statement, Kouyate placed a call to Conde.

Conde did not testify at the *Fatico* hearing. The only evidence he presented was representations by his then-attorney Geduldig as to conversations Geduldig had had with Conde and Kante. Geduldig stated that Kante told him that Kouyate did not tell Kante until after the three men had been arrested that Conde was the supplier. Kante also said that in an earlier conversation among Kouyate, Kante, and the government's confidential informant, Kouyate had stated that the supplier was a woman. Geduldig asked rhetorically why Conde would persist in denying that he was the heroin supplier, when admitting that role would likely gain him a reduced sentence. Geduldig said Conde refused to make that admission because it would not be true.

The court, referring to Geduldig's argument, asked the AUSA for the government's view as to why Conde would not simply admit being the supplier if such an admission would reduce his sentence. The AUSA suggested that there were several possible motivations, one being that Conde might wish to protect his own sources and might fear that if he admitted he was the supplier of the heroin to be sold by Kouyate and Kante, he would then be forced to identify his own suppliers.

The court also inquired whether, in the event that it found Conde was the heroin supplier, that finding would affect aspects of sentencing other than Conde's eligibility for the safety-valve reduction. The government responded, *inter alia*, "we will not be asking the court to deny him acceptance [-of-responsibility] points, [although] that is obviously up to the court." (Tr. 111.)

Having heard all of the arguments, the district court stated that it found Kouyate's testimony to be credible and to be corroborated by telephone records, and it found that Conde was the supplier of the heroin. The court stated that it saw no inconsistency between Kouyate's testimony that Conde was the supplier and the Kante statements reported by Geduldig. On the basis of its finding that, despite his denial, Conde was the supplier, the court denied the safety-valve reduction and imposed the statutory minimum of 60 months' imprisonment.

Judgment was entered as indicated above, and this appeal followed.

## II. DISCUSSION

On appeal, Conde argues principally that because both eligibility for a safety-valve reduction below the statutory mandatory minimum sentence and eligibility for an acceptance-of-responsibility decrease in the Guidelines offense level require a defendant to make truthful disclosures, once the court granted him an acceptance-of-responsibility decrease it was impermissible as a matter of law for the court to deny him the safety-valve reduction. He also contends that the government failed to establish his role as supplier by a preponderance of the evidence. We reject all of his contentions.

### A. The Findings as to Eligibility for a Safety–Valve Reduction

Federal law provides mandatory minimum prison terms for defendants convicted of violating federal drug laws with re-

spect to certain quantities of narcotics. The Sentencing Reform Act, as amended in 1994, contains a safety valve that provides that the district court "shall impose a sentence pursuant to [the Guidelines] without regard to any statutory minimum sentence" if the defendant meets certain criteria. 18 U.S.C. § 3553(f). The criteria set forth in the statute are (1) that the defendant has no more than one criminal-history point; (2) that the defendant "did not use violence or credible threats of violence or possess a firearm or other dangerous weapon ... in connection with the offense"; (3) that no one was killed or seriously hurt as a result of the offense; (4) that the defendant was not an organizer, leader, manager, or supervisor in the offense and was not engaged in a continuing criminal enterprise; and (5) that "not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan...." *Id.* §§ 3553(f)(1)-(5). These statutory criteria for the safety-valve reduction are repeated verbatim in Guidelines § 5C1.2. The only criterion at issue here is the fifth, *i.e.*, the defendant's truthful and complete disclosure to the government.

 The defendant has the burden of proving that he meets all of the criteria of the safety-valve provisions. *See, e.g., United States v. Ortiz,* 136 F.3d 882, 883 (2d Cir.1997) (per curiam); *United States v. Gambino,* 106 F.3d 1105, 1110 (2d Cir. 1997). Disputed facts relevant to sentencing need be established only by a preponderance of the evidence. *See, e.g., McMillan v. Pennsylvania,* 477 U.S. 79, 91–93, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *United States v. Miller,* 116 F.3d 641, 684–85 (2d Cir.1997); *cert. denied,* 118 S.Ct. 2063 (1998); *United States v. Garcia,* 920 F.2d 153, 156 (2d Cir.1990) (per curiam); *United States v. Lee,* 818 F.2d 1052, 1057 (2d Cir.), *cert. denied,* 484 U.S. 956, 108

S.Ct. 350, 98 L.Ed.2d 376 (1987). In reviewing a sentence, we are to "give due regard to the opportunity of the district court to judge the credibility of the witnesses," 18 U.S.C. § 3742(e) (1994), and we must accept its findings of fact "unless they are clearly erroneous," *id.; see, e.g., United States v. Sabir,* 117 F.3d 750, 752 (3d Cir.1997).

Conde, despite stating that the district court's "judgment call" that he was the heroin supplier for Kouyate and Kante is "not the basis for the challenge raised in this appeal" (Conde main brief on appeal at 13), argues also that that finding was not supported by a preponderance of the evidence (*see, e.g., id.* at 23 ("the government [did not] surpass[ ] the preponderance equator")). In this vein, Conde states that "[t]he district court was troubled by the apparent sincerity of [his] refusal to admit that he was a supplier when that admission could only have shortened his sentence...." (Conde main brief on appeal at 10–11.) And he contends that Kouyate's testimony should have been discredited on the ground that it was motivated by a desire to gain a shorter sentence; that

> the truth of the defendant's denial was at least more likely than not because the defendant would *not* have risked a more severe sentence had he capitulated to the government's position that he was a "supplier", but would instead have assured himself a sentence beneath the 60–month minimum[;]
>
>  .... [and] that the outcome below was in error.

(Conde main brief on appeal at 22 (emphasis in original)). For several reasons, his sufficiency challenge is untenable.

First, for the reasons discussed in Part II.B. below, Conde's underlying assumption, *i.e.*, that simply admitting his own role as a supplier "could only" have "assured" him a safety-valve reduction below the 60–month minimum (Conde main brief on appeal at 11, 22), is erroneous as a matter of law. Had he made only that

admission, refusing to say more, he would not have shown his entitlement to the reduction.

Second, we see no indication in the record that the court found that Conde's refusal to admit that he was a supplier was sincere. The court merely asked for the government's view on Geduldig's rhetorical question as to what would motivate Conde to deny being the supplier if admitting that role would reduce his sentence. After hearing the government's response that Conde might reasonably fear that if he admitted being a supplier he would be required as well to identify his own sources (a fear well founded for the doctrinal reasons discussed in the next section), the court neither inquired further into this question nor suggested that Conde's denial appeared to be sincere.

■ Third, Conde's contention that "the government" failed to "surpass[ ] the preponderance equator" (Conde brief on appeal at 23), reflects a misallocation of the burden of proof. As discussed above, the burden is on the defendant to prove that he has satisfied all of the safety-valve-reduction criteria. Plainly Conde did not carry his burden here with respect to the fifth criterion. Further, even had the burden been on the government, there would be no basis for reversal, for the evidence presented at the *Fatico* hearing easily supported the affirmative finding that Conde was a supplier. The record includes Kouyate's description of the repeated efforts to sell the heroin to the undercover agent; his testimony, corroborated in part by telephone records, that when the undercover agent indicated readiness to make the purchase, Kouyate attempted to reach Conde to obtain the heroin; evidence that when Conde was not available, the heroin was not available; and evidence that when the heroin was finally produced, it was brought in a vehicle driven by Conde. The court explicitly found Kouyate's testimony credible, and we see no basis on which to overturn that assessment. Certainly the court was not required to credit instead

either the denials and explanations transmitted through Geduldig by Conde, who did not testify at the *Fatico* hearing, or Conde's suggestion at his plea allocution that he was no more than Kouyate's driver. The notion that Conde was only a driver is surely contraindicated by the fact that the heroin transaction could not be consummated until he was available.

We conclude that the district court's finding that Conde was the heroin supplier was amply supported. Hence, Conde had not made full and truthful disclosure to the government.

**B.** *Eligibility for the Acceptance–of–Responsibility Adjustment*

■ As to acceptance of responsibility, the Guidelines provide that the sentencing court is to decrease a defendant's offense level by two steps "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." Guidelines § 3E1.1(a). Further, if the defendant qualifies for that decrease, and his offense level prior to the two-step decrease was 16 or greater, the court is to decrease the offense level by one additional step if

> the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:
>
> (1) timely providing complete information to the government concerning his own involvement in the offense; or
>
> (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently.

Guidelines § 3E1.1(b). Plainly, to be eligible for an acceptance-of-responsibility adjustment in offense level, a defendant is required to be truthful about his own conduct. The commentary to § 3E1.1 states, *inter alia*, that in determining a defendant's eligibility for the acceptance-of-re-

sponsibility adjustment, the court should consider whether the defendant is

> truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant *conduct for which the defendant* is accountable under § 1B1.3 (Relevant Conduct).... [A] defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.

Guidelines § 3E1.1 Application Note 1 (emphasis added).

This guideline does not appear to require a defendant to identify others who may have aided or participated in the offense conduct. As to the basic two-step decrease in offense level, the commentary states:

> Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a). A defendant may remain silent in respect to relevant conduct beyond the offense of conviction without affecting his ability to obtain a reduction under this subsection.

*Id.* And to be eligible for the third step of offense-level reduction under § 3E1.1(b)(1), the guideline by its terms requires only that the defendant give the government complete information about "his own" involvement. Guidelines § 3E1.1(b)(1).

The disclosure obligation imposed by the safety-valve provision is different, for § "3553(f)(5) requires more than accepting responsibility for one's own acts." *United States v. Ivester,* 75 F.3d 182, 184 (4th Cir.), *cert. denied,* 518 U.S. 1011, 116 S.Ct. 2537, 135 L.Ed.2d 1060 (1996). The requirement that a defendant truthfully disclose to the government "all information and evidence the defendant has" regarding the "offense or offenses that were part of the same course of conduct or of a common scheme or plan," 18 U.S.C. § 3553(f)(5);

Guidelines § 5C1.2(5), means that the defendant must " 'disclose all he knows concerning both his involvement *and that of any co-conspirators.'* " *United States v. Ortiz,* 136 F.3d at 883 (quoting *United States v. Ivester,* 75 F.3d at 184) (emphasis ours). Accordingly, we have held that a defendant was properly denied the safety-valve reduction where he failed to provide, for example, "the name of his heroin source." *United States v. Gambino,* 106 F.3d at 1112. *Accord United States v. Rodriguez,* 69 F.3d 136, 143–44 (7th Cir. 1995) (safety-valve relief properly denied where defendant failed to identify, and failed to testify that he was unable to identify, his narcotics supplier or customers); *United States v. Wrenn,* 66 F.3d 1, 3 (1st Cir.1995) (same where defendant did not identify customers).

Thus, as the Third Circuit has noted, "whereas section 3E1.1 focuses on the defendant's acceptance of individual responsibility, section 3553(f) requires the defendant to reveal a broader scope of information about the relevant criminal conduct...." *United States v. Sabir,* 117 F.3d at 753; *see also id.* ("Section 3553(f) and section 3E1.1 are not coterminous."). *Accord United States v. Adu,* 82 F.3d 119, 124 (6th Cir.1996) ("the fact that the defendant qualified for a two-level acceptance of responsibility reduction under § 3E1.1 does not establish eligibility for a safety-valve reduction under § 5C1.2"); *United States v. Arrington,* 73 F.3d 144, 149 (7th Cir.1996) ("admission of responsibility necessary to obtain a reduction under § 3E1.1(a) is not necessarily sufficient to satisfy § 3553(f)(5)").

Contrary to Conde's contention therefore, a defendant is not "necessarily truthful enough for both adjustments as long as he was found truthful enough for one" (Conde reply brief on appeal at 5), for the prerequisites for the two adjustments are not coextensive.

Conde also appears to argue that because the government agreed to an accep-

tance-of-responsibility adjustment, its opposition to a safety-valve reduction was foreclosed by law or by some form of estoppel. For example, he states that "the *government agree[d that Conde] ha[d] 'timely provided complete information* to the government concerning his own involvement in the offense', Guidelines § 3E1.1(b)(1)" (Conde main brief on appeal at 16 (emphasis added)); that the government "induced Mr. Conde's guilty plea with a stipulation ... *agreeing that his admissions* had earned him an adjustment for his timely acceptance of responsibility" (Conde reply brief on appeal at 3 (emphasis added)); and that "the government must therefore have agreed that the defendant 'truthfully admitt[ed] or [did] not falsely deny[ ] all offense conduct for which he was responsible—which in this case included whether or not Mr. Conde was the conspiracy's supplier" (*id.* (brackets in original)). These arguments suffer multiple flaws.

■ To begin with, as quoted at the start of this Part II.B., § 3E1.1(b) contains two subsections: (b)(1), which deals with completeness of admissions, and (b)(2), which centers on the timing of the plea. The Plea Agreement contained no statement that Conde had provided honest and complete information. Rather, it stated that the parties agree that Conde "will have demonstrated *an* acceptance of responsibility for his offense and will have assisted the prosecution of· his case *by timely notifying the government of his intention to enter a plea of guilty.*" (Plea Agreement at 2, ¶ A.2 (emphases added).) Such language does not suggest agreement to the applicability of subsection (b)(1), as claimed in Conde's brief, but rather to the applicability of subsection (b)(2). Further, as to the safety valve provided by "Title 18, United States Code, Section 3553(f)," the government expressly "reserve[d] the right to recommend that the Court not afford defendant such relief if it concludes defendant does not meet the statutory criteria." (Plea Agreement at 2, ¶ C.)

That reservation plainly also contradicts Conde's suggestion that the government induced his plea of guilty by misleading him to believe that it conceded his safety-valve reduction eligibility. Further, the government aired the precise nature of its questioning of Conde's eligibility—*i.e.,* its view that Conde had not been truthful in denying that he was the heroin supplier—at the very beginning of Conde's plea hearing. Thus, if Conde had been in any doubt as to either the existence or the substance of the government's reservations, he plainly had full knowledge before he entered his plea of guilty.

■ Nor is there merit in the suggestion that, as a matter of law, the government could not properly agree to an acceptance-of-responsibility adjustment without also agreeing to Conde's eligibility for the safety-valve reduction. While the government has no power to bind the court to any given sentencing adjustment (and indeed both the Plea Agreement and the government's statement at the *Fatico* hearing pointed out that the ultimate decision on sentencing issues is to be made by the court), the government itself was not barred from entering into a plea bargain in which it agreed to forgo an argument it had a right to advance in support of a more severe sentence. The ceding of one or more rights is a normal ingredient of a bargain. Thus, in securing Conde's agreement to plead guilty, the government, while expressly reserving the right to contest the safety-valve reduction, contractually bound itself not to contest Conde's eligibility for the acceptance-of-responsibility adjustment (an agreement it properly honored at the *Fatico* hearing, *see, e.g., Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) ("when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled")). And though Conde argues that the government's acceptance-of-responsibility concession should foreclose

**624**

any reservation of the right to oppose the safety-valve reduction, Conde, by entering into the Plea Agreement, agreed to the government's reserving that very right.

 Finally, Conde contends that the denial of the safety-valve reduction should be reversed on the basis that the district court "reached one of those absurd results that courts should try to avoid whenever alternative interpretations consistent with the legislative purpose are available." (Conde brief on appeal at 22 (internal quotation marks omitted).) Although the award of a downward adjustment for acceptance of responsibility in this case seems inconsistent with the finding that Conde falsely denied being the supplier of the heroin, that anomaly provides no basis for reversal of the denial of the safety-valve reduction. Rather, if the government had not contractually bound itself to forgo opposition to the acceptance-of-responsibility adjustment, had not waived such opposition at the *Fatico* hearing, and had cross-appealed, we would think the proper remedy for such an inconsistency would be a remand for the imposition of a new sentence calculated consistently with the district court's explicit factual finding, *i.e.*, without giving the defendant credit for acceptance of responsibility. *See* Guidelines § 3E1.1 Application Note 1 (a defendant who "falsely denies ... relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility"); 18 U.S.C. §§ 3742(b) and (e) (on appeal by the government, the court of appeals is to determine whether a sentence was imposed in violation of law or the Guidelines). We surely cannot conclude that because the government gave up its right to object to one inappropriate adjustment, a different—and opposed—unauthorized adjustment sought by the defendant must be granted.

In sum, we see no basis for reversal of the district court's refusal to apply the safety valve to Conde. Given the court's finding that one of the statutory prerequisites for the safety-valve reduction was lacking, it would hardly be faithful to the legislative purpose to require the court to sentence Conde below the statutory mandatory minimum.

### CONCLUSION

We have considered all of Conde's arguments on this appeal and have found them to be without merit. The judgment of the district court is affirmed.