Revised August 28, 1998

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-30679
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RICHARD D MATHES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Louisiana
_____

August 13, 1998

Before WISDOM, KING, and DAVIS, Circuit Judges.

KING, Circuit Judge:

Defendant-appellant Richard D. Mathes appeals his conviction under 18 U.S.C. § 228 for willful failure to pay child support. For the reasons set forth below, we affirm.

## I.   FACTUAL & PROCEDURAL BACKGROUND

Defendant-appellant Richard D. Mathes and Lori Mayers married in October 1987, and two children were born of the marriage.  In February 1991, Mathes and Mayers separated.  On March 22, 1992, Mayers obtained a judgment for child support in the amount of $500 per month in the family court for East Baton

Rouge Parish, Louisiana. Mathes stipulated to the amount of the support obligation. The judgment also stated that the amount of child support Mathes was ordered to pay was "being set without the necessity of either party having to show a change of circumstances to have the same redetermined." Although Mathes knew of this judgment, he neither paid any child support after entry of the judgment nor requested that the court redetermine the amount of his obligation. Mathes and Mayers divorced in January 1993.

On May 30, 1995, the family court rendered a judgment for child support arrearages against Mathes in the amount of $19,000 and interest thereon, plus attorneys' fees, curator's fees, and court costs. Mathes knew of this judgment and has paid no part of it.

In July 1995, Mayers remarried, and her husband adopted Mayers and Mathes's children. Mathes appears to have voluntarily relinquished his parental rights to allow the adoption, which terminated his obligation of future support for his children. Mayers and the children continue to reside in Louisiana.

Since the entry of the original judgment ordering him to pay child support, Mathes has been frequently unemployed, unable to work for several months due to an injury, and incarcerated for a year. In 1993, Mathes relocated to Texas. In 1996, he worked for a supermarket at $8.00 per hour and also received $168 per month in disability benefits from the Veterans Administration;

his total income for the year was approximately $13,000.  After moving to Texas, Mathes remarried and had a child with his new wife.

On November 1, 1996, an indictment was returned charging Mathes with willfully failing to pay a known child support obligation during the period from February 1, 1996 to November 1, 1996 in violation of 18 U.S.C. § 228.  Mathes was tried before a magistrate judge.  At the conclusion of the evidence, Mathes moved for a judgment of acquittal on the basis that insufficient evidence existed to support his conviction, and the district court denied the motion.  The court then found Mathes guilty, sentenced him to five-months imprisonment, imposed a $10 assessment, and ordered restitution in the amount of $21,000.  Mathes filed a timely notice of appeal.

## II.  STANDARD OF REVIEW

On appeal, Mathes contends that the government adduced insufficient evidence to sustain his conviction.  Our standard of review in evaluating the sufficiency of the evidence supporting a conviction after a bench trial is whether the finding of guilt is supported by substantial evidence, i.e., evidence sufficient to justify the trial judge, as the trier of fact, in concluding beyond a reasonable doubt that the defendant is guilty.  United States v. Garcia, 135 F.3d 951, 955 & n.4 (5th Cir.), cert. denied, 118 S. Ct. 2386 (1998); United States v. Collazo, 117

3

F.3d 793, 795 (5th Cir. 1997); United States v. Davis, 993 F.2d 62, 66 (5th Cir. 1993). "As an appellate court, it is not our task to weigh the evidence or determine the credibility of witnesses. We must view all evidence in the light most favorable to the government and defer to all reasonable inferences drawn by the trial court." United States v. Ybarra, 70 F.3d 362, 364 (5th Cir. 1995) (citation omitted).

### III. DISCUSSION

The Child Support Recovery Act of 1992 (CSRA), 18 U.S.C. § 228, provides that "[w]hoever willfully fails to pay a past due support obligation with respect to a child who resides in another State" commits a criminal offense. Id. § 228(a). The statute further provides that, as used in the section,

> the term "past due support obligation" means any amount--
> (A) determined under a court order or an order of an administrative process pursuant to the law of a State to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living; and
> (B) that has remained unpaid for a period longer than one year, or is greater than $5,000.

Id. § 228(d). The statute renders a first offense punishable by a fine, imprisonment not to exceed six months, or both. See id. § 228(b)(1).

Mathes contends that insufficient evidence exists to support his conviction because the government did not offer substantial evidence indicating that Mathes "willfully" failed to pay a past

4

due child support obligation.  In this regard, Mathes does not

dispute that he knew of the Louisiana family court judgment

imposing the child support obligation or that he failed to pay

it.  Rather, he contends that (1) the government failed to

establish that he possessed the ability to pay the past due

support obligation during the period alleged in the indictment

and (2) the government failed to rebut his claim that he

possessed a good-faith belief that he had no legal duty to pay

the child support in question.  We consider each of these

arguments in turn.

## A.  Inability to Pay

The CSRA does not define the term "willfully."  However, the

statute's legislative history provides some indication of what

Congress meant by the term.  See <u>Ashland Chem. Inc. v. Barco</u>

<u>Inc.</u>, 123 F.3d 261, 266 (5th Cir. 1997) ("Where a statute is

silent or ambiguous as to an issue, we next look to the

legislative history for guidance as to the intent of the

legislators.").  The report of the House Committee on the

Judiciary addressing the CSRA explains the statute's scienter

requirement as follows:

> The operative language establishing the requisite
> intent under [the CSRA] is "willfully fails to pay."
> This language has been borrowed from the tax statutes
> that make willful failure to collect or pay taxes a
> Federal crime, 26 U.S.C. §§ 7202, 7203.  Thus, the
> willful failure standard of [the CSRA] should be
> interpreted in the same manner that Federal courts have

5

interpreted these felony tax provisions.  In order to establish willfulness under those provisions[,]

> the government must establish, beyond a reasonable doubt, that at the time payment was due the taxpayer possessed sufficient funds to enable him to meet his obligation or that the lack of sufficient funds on such date was created by (or was the result of) a voluntary and intentional act without justification in view of all of the financial circumstances of the taxpayer.

> U.S. v. Poll, 521 F.2d 329, 333 (9th C[i]r. 1975).  The willfulness element in the tax felony statutes requires proof of an intentional violation of a known legal duty, and thus describes a specific intent crime.  U.S. v. Birkenstock, 823 F.2d 1026, 1028 (7th Cir. 1987).  The word "willfully" under the tax felony statutes imports a bad purpose or evil motive.  U.S. v. Bishop, 412 U.S. 346, 361 (1973).  The Committee intends that the willful failure standard of [the CSRA] be given similar effect as the willful failure standard contained in these tax felony provisions.

H.R. REP. NO. 102-771, at 6 (1992), available in 1992 WL 187429; United States v. Williams, 121 F.3d 615, 621 (11th Cir. 1997) ("In light of the Committee Report, and the similarity between the CSRA and the tax statutes that criminalize willful failure to pay money, we conclude it is proper to rely on cases construing the intent element in those tax statutes when construing the CSRA's willfulness standard."), cert. denied, 118 S. Ct. 1398 (1998).

Mathes contends that the evidence adduced at his trial is insufficient to establish beyond a reasonable doubt that either (1) he possessed sufficient funds during the period alleged in the indictment to pay his past due support obligation in its

entirety or (2) his possession of insufficient funds was the result of actions on his part specifically intended to render him unable to pay his support obligation. However, Mathes admitted at trial that, during the period alleged in the indictment, he could have paid some amount toward his support obligation. During direct examination by defense counsel, Mathes testified as follows:

> Q:    Mr. Mathes, do you have the ability to pay over $20,000 and support your current family?
>
> A:    No way.
>
> Q:    Do you have the ability to pay anything in excess over what it takes to support your current family?
>
> A:    Some.
>
> Q:    How much?
>
> A:    I really don't know. There is some money left over from the bills that I pay, the earnings that I make, and then I pay the bills. Yes, there is some money left over, but not $500 a month. Way under that.

We conclude that Mathes's acknowledgment that he could have paid some amount toward his past due support obligation precludes his financial condition from serving as a bar to criminal liability. Mathes's interpretation of the CSRA as requiring proof beyond a reasonable doubt that, during the period alleged in the indictment, the defendant had the ability to pay the entire amount of past due child support owed possesses no basis in the language of the statute. The CSRA defines "support obligation" to include "any amount . . . determined under a court

7

order . . . to be due from a person for the support and maintenance of a child . . . that has remained unpaid for a period longer than one year." 18 U.S.C. § 228 (emphasis added). Mathes's legal obligation to pay Mayers approximately $20,000 in child support arrearages necessarily encompassed an obligation to pay any lesser-included amount that Mathes was capable of paying. Thus, while Mathes may not have willfully failed to pay the full amount of child support arrearages that he owed, he could have willfully failed to pay the lesser amount that he was capable of paying; that lesser amount fits the CSRA's definition of support obligation, which includes any amount due pursuant to court order that has remained unpaid for longer than a year.

Were we to conclude otherwise, child support obligors would be able to insulate themselves from criminal liability by simply failing to make child support payments until the total amount past due is an amount that they are incapable of paying in one lump sum. Construing the CSRA so that it creates such a perverse incentive for extended nonpayment would surely flout Congress's purpose for enacting the statute: to remedy "the growing problem of interstate enforcement of child support by punishing certain persons who intentionally fail to pay their child support obligations." H.R. REP. NO. 102-771, at 4 (1992). We therefore conclude that Mathes's financial condition did not preclude the district court from finding beyond a reasonable doubt that he willfully failed to pay a past due support obligation.

8

### B. Good-Faith Belief that No Obligation Existed

Mathes next argues that the government failed to negate his good-faith belief that he did not owe the $20,000 in child support arrearages that the Louisiana family court ordered him to pay Mayers. In support of this contention, Mathes points to his testimony at trial that he discussed his child support obligation with a Texas lawyer and his probation officer and that each of them expressed a belief that he did not owe the child support obligation because he had relinquished his parental rights. Additionally, Mathes notes that Ken Seago, his Louisiana probation officer, testified that Mathes "indicated to [him] that he didn't feel like he owed anything because he had given up his parental rights."

As noted earlier, the legislative history of the CSRA indicates that cases construing the willfulness requirement of 26 U.S.C. §§ 7202 and 7203, statutes which criminalize the willful failure to file federal income tax returns, provide information, collect taxes, or pay taxes, are relevant in construing the willfulness requirement of the CSRA. See H.R. REP. NO. 102-771, at 6 (1992); Williams, 121 F.3d at 621. The Supreme Court has held that, in order to sustain a conviction under these tax statutes, the government must prove beyond a reasonable doubt "that the defendant knew of th[e] duty [to file a return, provide information, collect taxes, or pay taxes], and that he

9

voluntarily and intentionally violated that duty." Cheek v.

United States, 498 U.S. 192, 201 (1991). The Court went on to

state that "carrying this burden requires negating a defendant's

claim of ignorance of the law or a claim that because of a

misunderstanding of the law, he had a good-faith belief that he

was not violating any of the provisions of the tax laws." Id. at

202. Thus, "if [a defendant] assert[s] that he truly believed

that [he was not violating any provision of the Internal Revenue

Code] . . . , and the [trier of fact] believe[s] him, the

Government [has] not . . . carried its burden to prove

willfulness, however unreasonable the court might deem such a

belief." Id. (emphasis added); United States v. Wisenbaker, 14

F.3d 1022, 1025 (5th Cir. 1994). Other circuits have applied

Cheek's willfulness standard in CSRA cases, and we now do the

same. See Williams, 121 F.3d at 621; United States v. Crawford,

115 F.3d 1397, 1407 (8th Cir. 1997).

Applying Cheek's definition of willfulness to this case, we

conclude that substantial evidence supports the district court's

conclusion that Mathes willfully failed to pay a past due support

obligation. Mathes acknowledged at trial that he was aware of

the Louisiana court's original March 22, 1992 judgment ordering

Mathes's payment of child support as well as the May 30, 1995

judgment for arrearages.

The district court, as the trier of fact, was free to, and

expressly did, discredit Mathes's testimony that he had been told

10

by a Texas attorney and by his probation officer that his relinquishment of his parental rights extinguished his obligation to pay child support that had previously accrued. See United States v. Ayala, 887 F.2d 62, 67 (5th Cir. 1989) ("This Court recognizes that it is the sole province of the trier of fact to weigh the evidence and the credibility of the witnesses." (internal quotation marks omitted)). Furthermore, Mathes testified that the Texas attorney with whom he purportedly spoke told him that he was unfamiliar with the laws of Louisiana.

> Reliance on counsel's advice excuses a criminal act only to the extent it negates willfulness and to negate willfulness counsel's advice must create (or perpetuate) an honest misunderstanding of one's legal duties. If a person is told by his attorney that a contemplated course of action is legal but subsequently discovers . . . reason to doubt the advice, he cannot hide behind counsel's advice to escape the consequences of his violation.

United States v. Benson, 941 F.2d 598, 614 (7th Cir. 1991), mandate recalled and amended in other respects by 957 F.2d 301 (7th Cir. 1992). Moreover, Mathes admitted that he did not even show the attorney the judgment ordering payment of child support or the judgment for arrearages. As such, even assuming that the attorney gave Mathes the advice that he claims, the fact that Mathes did not fully disclose all of the pertinent facts to the attorney would support the district court's determination that Mathes did not in good faith rely on the advice of counsel. See

11

United States v. Schmidt, 935 F.2d 1440, 1449 (4th Cir. 1991).[1]
Finally, the district court could properly infer that Seago's
testimony that Mathes "didn't feel like he owed anything because
he had given up his parental rights" indicated that Mathes did
not believe that he <u>ought</u> to have to pay the past due support but
<u>not</u> that he believed that he possessed no legal duty to do so.
Cf. Cheek, 498 U.S. at 203-04 ("Of course, the more unreasonable
the asserted beliefs or misunderstandings are, the more likely
the [trier of fact] will consider them to be nothing more than
simple disagreement with known legal duties imposed by the tax
laws and will find that the Government has carried its burden of
proving knowledge.").  Substantial evidence thus supports the
district court's conclusion that Mathes knew of his duty to pay
the past due child support and voluntarily and intentionally
violated that duty.  See Collazo, 117 F.3d at 795 ("We must view
all evidence in the light most favorable to the government and
defer to all reasonable inferences drawn by the trial court.").

---

[1]  Mathes's failure to show the attorney the judgment
ordering child support or the judgment for arrearages is rendered
even more salient by Mathes's later clarification of the advice
he supposedly received.  Mathes testified that the attorney told
him that "[t]he way [he] seen it, there was nothing in th[e]
papers [that he actually showed the attorney, which consisted of
the divorce decree and documents related to the adoption] that
said I owed child support."

## IV. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment of conviction and sentence.