**UNITED STATES of America, Plaintiff,**

v.

**Lester MATTICE, a/k/a Donald L. Mattice, Defendant.**

**No. 97–CR–6063L.**

United States District Court,
W.D. New York.

Sept. 16, 1998.

Sylvia McCoy, U.S. Atty., Rochester, NY, for U.S.

William Clauss, Federal Public Defender, Rochester, NY, for defendant.

### DECISION AND ORDER

LARIMER, Chief Judge.

In an indictment filed October 15, 1997, defendant Lester Mattice ("defendant") was charged with willfully failing to pay child support in violation of the Child Support Recovery Act of 1992 ("CSRA"), 18 U.S.C. § 228. Defendant consented to proceed before a magistrate judge, pursuant to 18 U.S.C. § 3401, in this misdemeanor case.

On January 23, 1998, after a two-day bench trial, Magistrate Judge Jonathan W. Feldman found defendant guilty of violating 18 U.S.C. § 228. On April 2, 1998, Judge Feldman sentenced defendant to a ninety-day term of imprisonment, followed by a one-year term of supervised release, and ordered full restitution in the amount of $57,271.28. Defendant timely appealed his conviction and sentence to this Court, pursuant to 18 U.S.C. § 3402.

### FACTUAL BACKGROUND

Defendant married Josephine Galena in 1974. T at 99.[1] The couple had three children and then separated in August 1978. T at 99–100. By order dated October 19, 1978, New York State Supreme Court Justice John A. Mastrella granted Josephine Mattice temporary alimony in the amount of $70 per week and temporary child support in the amount of $80 per week. Gov't Ex. 1. On June 4, 1982, New York State Supreme Court Justice Wilmer J. Patlow granted Mrs. Mattice a divorce and child support in the amount of $20 per week per child. Gov't Ex. 6. Justice Patlow also entered judgment against defendant in the amount of $11,550

for arrears in child support that were due under Justice Mastrella's prior order. *Id.*

In the instant action, the Government successfully prosecuted the defendant under 18 U.S.C. § 228 for failing to pay these child support obligations.

### DISCUSSION

On appeal, defendant maintains that: (1) there was insufficient evidence to convict him of violating 18 U.S.C. § 228; and (2) the trial judge abused his discretion in ordering full restitution.

### A. Sufficiency of the Evidence

In challenging the sufficiency of the evidence, a defendant bears a heavy burden. *United States v. Giraldo,* 80 F.3d 667, 673 (2d Cir.1996); *United States v. Rosenthal,* 9 F.3d 1016, 1024 (2d Cir.1993). An appellate court must view the evidence in the light most favorable to the Government, drawing all possible inferences in its favor. *United States v. Allah,* 130 F.3d 33, 45 (2d Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 2347, 141 L.Ed.2d 718 (1998); *United States v. Rea,* 958 F.2d 1206, 1221 (2d Cir.1992). Further, where there is conflicting testimony, the reviewing court must defer to the fact finder's assessments of credibility. *United States v. Desimone,* 119 F.3d 217, 223 (2d Cir.1997); *United States v. Wallace,* 59 F.3d 333, 338 (2d Cir.1995). In essence, the appellate court must affirm the conviction so long as, from the inferences reasonably drawn, the trier of fact might fairly have concluded guilt beyond a reasonable doubt. *United States v. Perez,* 144 F.3d 204, 208 (2d Cir. 1998); *United States v. Skowronski,* 968 F.2d 242, 247 (2d Cir.1992).

Defendant maintains there was insufficient evidence adduced at trial to prove that he willfully failed to pay a past due support obligation. Specifically, defendant argues that the evidence failed to establish that: (1) he knew there was a court order requiring him to pay child support; (2) he actually failed to support his children; (3) he possessed sufficient funds to pay his past due

---

1. The transcript of the trial testimony taken on January 22, 1998 is referred to as "T." The transcript of the trial testimony taken on January 23, 1998 is referred to as "TT." The transcript of defendant's sentencing held on April 2, 1998 is referred to as "S."

support obligation in full; and (4) he knew it was a violation of federal law to fail to pay child support.

### 1. Knowledge of a Court Order

■ Defendant argues that the Government failed to prove he knew there was a court order requiring him to pay child support. I find this argument to be completely without merit.

The evidence at trial clearly demonstrated that defendant actively participated in the separation and divorce proceedings where the issue of child support was litigated. For example, in the proceedings to determine temporary alimony and child support, defendant, who was represented by counsel, submitted an affidavit requesting that the award be limited to $400 per month. Gov't Ex. 2. Defendant also appeared at Special Term when the matter was argued and was present in open court when Justice Mastrella awarded Josephine Mattice temporary alimony in the amount of $70 per week and temporary child support in the amount of $80 per week. T at 109–10. Defendant also was personally served with the pleadings in his divorce action, which specifically requested not only future child support, but also a judgment for past due child support. T at 68–79.

Additionally, Mrs. Mattice spoke with defendant several times over the years regarding child support and at one point even notified him that his current obligation had been reduced, pursuant to the judgment of divorce, to $20 per week per child. T at 119–20. Finally, defendant's wages were garnished from October 1991 through June 1992, and he was notified that this garnishment was for family support obligations he owed Josephine Mattice. T at 177–87. Judge Feldman found this evidence credible and specifically relied upon it in determining that defendant, in fact, had knowledge of his support obligation. TT at 88–90.

Although defendant steadfastly maintained at trial that he had no knowledge of the court orders requiring him to pay child support, Judge Feldman found his testimony completely incredible: "Because I find the defendant's testimony to lack any indicia of reliability or veracity, I am unable to believe his claim that he was unaware of his legal obligation in 1996 and 1997 to pay child support payments ... pursuant to previously entered court orders." TT at 90. Judge Feldman amplified this sentiment at sentencing: "I just found your testimony that you had no idea that you were supposed to pay the support rings as false. as any testimony I've heard in court." S at 25. This credibility assessment was entirely within Judge Feldman's province, and I must defer to it. Accordingly, I find there was sufficient evidence that defendant knew of his child support obligation.

### 2. Failure to Support Children

■ Defendant also maintains there was insufficient evidence that he failed to support his children over the years. According to defendant, he made substantial and considerable payments toward the maintenance of his children.

At trial, Josephine Mattice testified that defendant sent her $100 for the children at Christmas in 1985 and sent bicycles for the children in 1987. T at 132–34. Mrs. Mattice stated that she considered these items to be gifts and not child support. T at 135–37. Sherri Wood, Esq. from the Monroe County Child Support Unit confirmed that any gifts to the children, in fact, would not be counted as child support. T at 58. Josephine Mattice testified further that the only child support she received from defendant was when his wages were garnished. T at 118–19.

Defendant, on the other hand, testified that he frequently sent money for the children. TT at 22. Defendant did not, however, have any documentary evidence to support his testimony. Further, when asked specifically how much money he sent over the years, he stated: "I have no idea, probably couple, three, four hundred dollars." TT at 56. Finally, there was absolutely no evidence at trial that defendant sent any child support during the period alleged in the indictment, January 1996 through October 1997.

In view of this evidence, Judge Feldman had ample basis to credit the testimony of Josephine Mattice, and not that of defendant,

in determining that defendant had failed to pay child support for his children. Therefore, I conclude there was sufficient evidence that defendant failed to pay his child support obligation.

### 3. Inability to Pay

■ Defendant argues further that there was insufficient evidence that he had the ability to pay his past due support obligation in full during the period alleged in the indictment, and, therefore, his failure to pay child support cannot be deemed willful.

Defendant's "interpretation of the CSRA as requiring proof beyond a reasonable doubt that, during the period alleged in the indictment, the defendant had the ability to pay the entire amount of past due child support owed possesses no basis in the language of the statute." *United States v. Mathes,* 151 F.3d 251, 253 (5th Cir.1998). The CSRA defines "support obligation" to include any amount that has been "determined under a court order ... to be due from a person for the support and maintenance of a child ... that has remained unpaid for a period longer than one year, or is greater than $5,000." 18 U.S.C. § 228(d)(1)(A)–(B). Accordingly, defendant's legal obligation to pay Josephine Mattice over $55,000 in child support arrears "necessarily encompassed an obligation to pay any lesser-included amount that [he] was capable of paying." *Mathes,* 151 F.3d at 253.

Judge Feldman found that defendant had the financial wherewithal to contribute at least some amount toward the support of his children:

> Finally, for ... substantially the same reasons regarding credibility, I reject the defendant's claim that his failure to pay child support obligations in '96 and '97 was not willful because of an inability to pay such child support payments. Although certainly not wealthy, the Government did present evidence that the defendant earned over $19,000.00 in 1996 ... and $18,000.00 in 1997....

> While the defendant may have been unable to pay all the past-due arrears, he was

certainly able to contribute to his then due and owing child support obligations.

TT at 90–91.

If courts were to accept defendant's argument, "child support obligors would be able to insulate themselves from criminal liability by simply failing to make child support payments until the total amount past due is an amount that they are incapable of paying in one lump sum." *Mathes,* 151 F.3d at 254. Certainly, this is not what Congress intended in enacting the CSRA.

Therefore, defendant's inability to pay the full $55,000 during the period alleged in the indictment did not preclude Judge Feldman from finding that defendant willfully failed to pay a past due support obligation. The evidence at trial sufficiently demonstrated that defendant had the means to pay at least some amount toward his child support obligation, and, instead, he paid nothing. This certainly constitutes a violation of the statute.

### 4. Violation of Federal Law

■ Finally, defendant maintains that the Government failed to prove he knew it was a federal crime to not pay child support. An individual is guilty of violating 18 U.S.C. § 228 if he "willfully fails to pay a past due support obligation." 18 U.S.C. § 228(a). In order for the Government to establish willfulness, it must "prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *United States v. Williams,* 121 F.3d 615, 621 (11th Cir.1997) (quoting *Cheek v. United States,* 498 U.S. 192, 201, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991)).

Here, the Government was not required to prove that defendant knew his failure to pay child support was a violation of a federal criminal statute. The Government was simply required to prove that defendant knew of his legal duty to pay child support and that he nevertheless voluntarily and intentionally violated that duty. The Government clearly met this burden at trial.

For all the foregoing reasons, I find there was sufficient evidence for Judge Feldman to fairly conclude that defendant was guilty be-

yond a reasonable doubt of violating 18 U.S.C. § 228. Accordingly, Judge Feldman's judgment of conviction is affirmed.

## B. Restitution Order

■ Defendant argues that Judge Feldman abused his discretion in ordering full restitution in this case. Specifically, defendant maintains that Judge Feldman failed to consider the following factors, which are set forth in § 3363, in arriving at the restitution order: (1) the amount of loss sustained by the victim; (2) the financial resources of the defendant; and (3) the financial needs and earning ability of the defendant and defendant's dependents. 18 U.S.C. § 3663(a)(1)(B)(i)(I)–(II).

The CSRA provides that upon conviction, the sentencing court *"shall order* restitution under section 3663 *in an amount equal to the past due support obligation* as it exists at the time of sentencing." 18 U.S.C. § 228(c) (emphasis added). Relying on the plain language of the statute, Judge Feldman determined that he was required to order full restitution in this case. He did not believe that a consideration of the factors set forth in § 3663 was warranted given the mandatory language of § 228(c). Nevertheless, in the alternative, he found that even after an adequate consideration of all the factors listed under § 3663, full restitution was still appropriate in this case.

Judge Feldman determined that the amount of the past due support obligation, and, therefore, the amount of loss sustained by the victim, was $57,271.28. He arrived at this figure by relying on "the testimony of Sherr[i] Wood, the Monroe County Child Support Unit supervisor, and the defendant's ex-wife, Josephine Mattice, as credible testimony as to the amount of the past-due child support debt." TT at 88. Judge Feldman did not credit defendant's testimony that he sent numerous payments to Mrs. Mattice over the years. Such a factual determination was well within his authority and is fully supported in the record.

With respect to the other factors, Judge Feldman specifically stated on the record:
Title 18 United States Code section 3663 allows the Court to take into consideration not only the financial situation of the de-

fendant, but the future earning ability of the defendant. The defendant is employed full time. He has submitted letters from both the branch manager and the sales coordinator of his current employment. They've written letters of reference for him and, in fact, the manager indicates that he is part of the store's success.... [T]he defendant is married. The household has other income. His wife is an accountant, she is working full time. The defendant is fifty-two years old. Assuming he retires at sixty-five, he has over a decade of earning ability left, and I think that there is case law in the Second Circuit which would support the future earning ability of a defendant as a reasonable basis on which to order a restitution amount....
S at 10–11.

■ I find that Judge Feldman did not abuse his discretion in awarding full restitution in this case, as required by 18 U.S.C. § 228(c), and in setting up a reasonable payment schedule. The mere fact that defendant may have limited financial resources does not render the order of restitution an abuse of discretion. *United States v. Mortimer,* 52 F.3d 429, 436 (2d Cir.1995). Further, Judge Feldman tempered his immediate imposition of full restitution by ordering that during defendant's term of supervised release, he would be required to pay only $70 per week—$20 for his current child support obligation and $50 toward the arrears. In light of the judgment of conviction and defendant's past defalcations, this installment plan was quite reasonable.

Further, to the extent that a consideration of the factors set forth in § 3663 was necessary, I find that Judge Feldman adequately considered these factors, and there is no clear error in his findings. Accordingly, Judge Feldman's order of full restitution is affirmed.

## CONCLUSION

The judgment of conviction and sentence are affirmed in all respects.

IT IS SO ORDERED.