**UNITED STATES of America,
Appellee,**

v.

**Lester MATTICE, Defendant–
Appellant.**

No. 98–1578.

United States Court of Appeals,
Second Circuit.

Argued April 6, 1999.

Decided July 29, 1999.

William Clauss, Federal Public Defender, Western District of New York, Rochester, NY (Marybeth Covert, of counsel, on the brief), for defendant-appellant.

Brian M. McCarthy, Assistant United States Attorney, Rochester, NY (Denise E. O'Donnell, United States Attorney for the Western District of New York, Rochester, NY, on the brief), for appellee.

Before: NEWMAN, WALKER and SOTOMAYOR, Circuit Judges.

SOTOMAYOR, Circuit Judge:

After a two-day bench trial held on January 22 and 23, 1998, Magistrate Judge Jonathan W. Feldman found defendant-appellant Lester Mattice ("Mattice") guilty of violating the Child Support Recovery Act of 1992 (the "CSRA" or the "Act"), 18 U.S.C. § 228, *amended by* 18 U.S.C.A. § 228 (West Supp.1999)[1], by willfully failing to pay a past due child support obligation. On April 2, 1998, the magistrate judge sentenced Mattice to ninety days' imprisonment and ordered him to pay full restitution in the amount of $57,271.28. Mattice timely appealed his conviction and sentence to the United States District Court for the Western District of New York (David G. Larimer, Chief Judge) pursuant to 18 U.S.C. § 3402. On September 16, 1998, the district court affirmed the judgment of conviction and sentence in all respects. On appeal to this Court, Mattice contends that the government failed to prove that he willfully failed to pay a past

---

1. After Mattice's conviction, the CSRA was amended by the Deadbeat Parents Punishment Act of 1998, Pub.L. No. 105–187, § 1, 112 Stat. 618 (1998), which, among other things, increased the penalties for certain violations of the Act. *See* 18 U.S.C.A. § 228 (West Supp.1999). Unless otherwise noted, all citations to the CSRA in text are to the statute in effect at the time of Mattice's conviction.

due child support obligation. Specifically, Mattice argues that the government failed to establish that he knew his conduct violated the CSRA, and that he was financially able to pay his entire past due child support obligation during the period charged in the indictment. Mattice further contends that the magistrate judge abused his discretion by ordering full restitution. We affirm.

## BACKGROUND

Lester and Josephine Mattice married in 1974 and lived together in Rochester, New York. The couple had three children before separating in August 1978. Josephine Mattice subsequently initiated separation proceedings in the New York State Supreme Court. On October 19, 1978, Justice John A. Mastrella issued an order (the "1978 order") granting Josephine Mattice custody of the children and awarding her $70 per week in temporary alimony and $80 per week in temporary child support. Represented by counsel in the separation proceedings, Mattice filed an affidavit requesting that any award of alimony or child support not exceed $400 per month. He was present in court when Justice Mastrella rejected that request and announced the terms of his order. Mattice subsequently failed to comply with the 1978 order. On October 19, 1979, the Clerk of the New York State Supreme Court, Monroe County, entered a $3,100 judgment against Mattice "as and for arrearages due from him for support and alimony as directed" by the 1978 order.

Mattice moved to Colorado in 1979, and Josephine Mattice filed for divorce approximately two years later. Josephine Mattice's attorney in the divorce action, Janine Janas Webb, testified at trial that she served Mattice personally with copies of the summons and verified complaint, which requested both future child support and a judgment of arrears due under the 1978 order.[2] Mattice failed to appear in the divorce proceeding, and by order dated June 4, 1982 (the "1982 order"), Justice Wilmer J. Patlow granted the divorce. Under the terms of the 1982 order, Mattice's alimony obligations were eliminated and his weekly child support obligations were reduced from $80 to $60. Justice Patlow also entered judgment against Mattice in the amount of $11,550 for child support arrears due under the 1978 order. Although Webb did not specifically recall sending Mattice a copy of the 1982 order, she testified that it was her routine practice to send a copy of any divorce judgment to the defendant at his or her last known address.

Josephine Mattice testified at trial that Mattice never sent her any child support payments under either order. According to her testimony, which was specifically credited by the magistrate judge, she spoke to her ex-husband several times over the years concerning his child support obligations, and Mattice told her at one point that he "just makes kids, he doesn't pay for them." She also testified to telephone conversations in which she discussed the 1982 order with Mattice, informed him that his child support obligations had been reduced to $60 per week, and asked him to send her the money he owed. Mattice responded that he had no money. In August 1990, Josephine Mattice contacted the Monroe County Child Support Enforcement Unit (the "Child Support Enforcement Unit" or the "Enforcement Unit") seeking assistance in recovering the $35,250 in child support arrears that were then owing. The Enforcement Unit located Mattice in Colorado and, with the assistance of its Colorado

---

**2.** According to an affidavit of service prepared contemporaneously by Webb and credited by the magistrate judge, she arranged for service of the divorce papers at her office at Mattice's request. When Mattice arrived at Webb's office, she confirmed his identity by referring to a photograph provided by Josephine Mattice. Webb served Mattice with copies of the summons and verified complaint, and he responded by laughing and saying: "They'll never get anything like that out of me."

counterpart, garnished his wages. From December 1991 to July 1992, the Enforcement Unit collected periodic payments from Mattice totaling $1,378.72, which were passed on his ex-wife. According to Josephine Mattice, these were the only child support payments that she ever received pursuant to the 1978 and 1982 orders.

At trial, Mattice claimed that he was unaware of any legal obligation to pay child support. Although he acknowledged that he participated in court proceedings relating to alimony and child support in 1979, he stated that he had already made all of the payments required under the 1978 order. Mattice denied having been served with papers in the divorce action and insisted that he never received notice of any court-ordered child support obligations after leaving Rochester in 1979. Mattice also testified that his ex-wife never told him about the 1982 order, that he and Josephine Mattice had spoken "[a]s little as possible" over the years, and that they had "never talked about child support." In addition, Mattice testified that although he was aware that his wages had been garnished in 1990 or 1991, he was not aware that the garnishment was related to any child support obligations. There was testimony at trial, however, that Mattice's employer notified him in October 1991 that it had received a garnishment order and would begin garnishing his wages. A copy of the garnishment order, which specifically mentioned "current child support or maintenance" and "arrearages," was attached to this notice. The garnished amounts were also noted on Mattice's payroll stubs along with other deductions for federal and state taxes and benefits.

At trial, Mattice argued that even if he had known about the 1982 order, the government failed to prove that he had the financial means to comply with that order in 1996 and 1997, the period charged in the indictment. Mattice testified that there were "a[ ] number of periods where [he had] been unable to work or unable to find work." The government introduced evidence, however, that from 1984 to 1992, and from 1995 to 1998, Mattice worked as a door-to-door vacuum cleaner salesman for the Electrolux Corporation. According to Mattice's tax returns and Electrolux Corporation payroll documents, he earned $5,913.65 from Electrolux in 1995, $19,-275.24 in 1996, and $18,810.29 in 1997. In addition, Mattice's present wife, Laura, whom he married in 1984 and with whom he has two additional children, is an accountant. Mattice and his present wife reported joint household income of $29,431 in 1994, $28,213 in 1995 and $32,440 in 1996.

Although he denied knowledge of the 1982 order and denied having the ability to pay the amounts past due under that order, Mattice also testified that he sent his ex-wife "considerable" child support payments over the years, in the form of postal money orders and money-grams. Mattice was unable to produce any documentary evidence of these payments, however, and Josephine Mattice denied receiving any money from Mattice, other than $100 he sent her in 1985 as a Christmas gift for the children. Mattice also testified that he sent "probably [a] couple, three, four hundred dollars" directly to the children and took them shopping on one occasion when he returned to Rochester to attend his grandmother's funeral. According to Mattice, "any time [he] had money [he] sent it." Mattice claimed that he sent this money because he had a moral rather than a legal obligation to support his children.

Based on this evidence, the magistrate judge found Mattice guilty of willfully failing to pay a past due child support obligation in violation of the CSRA. In reaching this conclusion, the magistrate judge specifically rejected Mattice's claim that he was unaware of his obligation to pay child support:

> Because I find the defendant's testimony to lack any indicia of reliability or veracity, I am unable to believe his claim that he was unaware of his legal obligation in

1996 and 1997 to pay child support ... pursuant to previously entered court orders.

"[F]or substantially the same reasons regarding credibility," the magistrate judge rejected Mattice's other claim that he was financially unable to pay the amounts due under those orders:

Although certainly not wealthy, the [g]overnment did present evidence that the defendant earned over $19,000 in 1996 ... and $18,000 in 1997.... While the defendant may have been unable to pay all the past-due arrears, he was certainly able to contribute to his then due and owing child support obligations.

The magistrate judge sentenced Mattice to ninety days' imprisonment, to be followed by a one-year term of supervised release. The magistrate judge concluded that § 228(c) of the Act required him to impose full restitution, which he determined to be $57,271.28, and stated that he would order full restitution in any event as an exercise of discretion under 18 U.S.C. § 3663(a) ("The court, when sentencing a defendant convicted of an offense under this title, ... may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense....."). Accordingly, the magistrate judge ordered Mattice to pay restitution in the amount of $70 per week ($20 per week for current child support and $50 per week towards arrears) during his period of supervised release, after which any outstanding restitution would become a judgment for which Mattice would remain liable.

Mattice timely appealed his conviction and sentence to the United States District Court for the Western District of New York pursuant to 18 U.S.C. § 3402. In a decision and order dated September 16, 1998, the district court affirmed Mattice's judgment of conviction and sentence in all respects. *See United States v. Mattice*, 22 F.Supp.2d 49 (W.D.N.Y.1998). This appeal followed.

## DISCUSSION

### I. *Willful Failure to Pay*

■ Mattice's principal contention on appeal is that the government failed to prove that he acted willfully in failing to pay a past due child support obligation. Mattice, of course, "bears a heavy burden" in challenging the sufficiency of the evidence to support his conviction. *See United States v. Matthews*, 20 F.3d 538, 548 (2d Cir.1994). "We will find evidence to be legally insufficient to sustain a conviction only where, viewing the evidence in the light most favorable to the government and construing all inferences in its favor, no rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Gonzalez*, 110 F.3d 936, 940 (2d Cir.1997).

■ The CSRA provides that "[w]hoever willfully fails to pay a past due support obligation with respect to a child who resides in another State" commits a criminal offense punishable by a fine, imprisonment or both. *See* 18 U.S.C. § 228(a)-(b). The meaning of the term "willfully" is "often dependent on the context in which it appears." *Bryan v. United States*, 524 U.S. 184, 118 S.Ct. 1939, 1944–45, 141 L.Ed.2d 197 (1998). Although the CSRA does not define willfulness, "[c]riminalization of the willful failure to pay is not new to the criminal code; it appears frequently in the tax statutes." *United States v. Williams*, 121 F.3d 615, 620 (11th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1398, 140 L.Ed.2d 656 (1998). Under 26 U.S.C. § 7202, for example, "[a]ny person required under [Title 26] to collect, account for, and pay over any tax imposed by [Title 26] who willfully fails to collect or truthfully account for and pay over such tax shall ... be guilty of a felony." *See also* 26 U.S.C. § 7203 ("Any person required under this title to pay any estimated tax or tax ... who willfully fails to pay such estimated tax or tax ... shall ... be guilty

of a misdemeanor. . . ."). The Supreme Court has interpreted the willfulness standard in the tax statutes to mean the "voluntary, intentional violation of a known legal duty." *Cheek v. United States,* 498 U.S. 192, 201, 111 S.Ct. 604, 112 L.Ed.2d 617 (1992) (quoting *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976), and *United States v. Bishop,* 412 U.S. 346, 360, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973)) (internal quotation marks omitted). "Willfulness, as construed by [the Court's] decisions in criminal tax cases, [thus] requires the Government to prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty." *Id.*

The legislative history of the CSRA specifically states that the Act's "willfully fails to pay" language was "borrowed from the tax statutes that make willful failure to collect or pay taxes a Federal crime." H.R.Rep. No. 102–771, at 6 (1992) (citing 26 U.S.C. §§ 7202, 7203). This history directs that

> the willful failure standard of [the CSRA] should be interpreted in the same manner that the Federal courts have interpreted these felony tax provisions. . . . The willfulness element in the tax felony statutes requires proof of an intentional violation of a known legal duty, and thus describes a specific intent crime. The word "willfully" under the tax felony statutes imports a bad purpose or evil motive. The Committee intends that the willful failure standard of [the CSRA] be given similar effect as the willful failure standard contained in these tax felony provisions.

*Id.* (citations omitted); *see also Williams,* 121 F.3d at 621 ("In light of the Committee Report, and the similarity between the CSRA and the tax statutes that criminalize willful failure to pay money, we conclude it is proper to rely on cases construing the intent element in those tax statutes when construing the CSRA's willfulness standard."); *United States v. Crawford,* 115 F.3d 1397, 1407 (8th Cir.) (holding that the government had proved willfulness where "[t]here was ample evidence to support the inference that [the defendant] voluntarily and intentionally violated a known legal duty to pay past due child support"), *cert. denied,* ── U.S. ──, 118 S.Ct. 341, 139 L.Ed.2d 264 (1997).

Mattice contends that the government failed to prove that he voluntarily and intentionally violated a known legal duty to pay child support. He argues that the government's proof of willfulness was insufficient for two reasons. First, there was no evidence that he knew his conduct violated the CSRA. Second, there was no evidence that he was financially able to pay his entire past due child support obligation during the period charged in the indictment. We address these contentions in turn.

### A. Knowledge of Legal Duty to Pay

Mattice contends that in order to satisfy the knowledge component of the CSRA's willfulness standard, the defendant must have known that his conduct violated the Act. In support of this argument, Mattice relies principally on *Bryan v. United States,* 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998), in which the Supreme Court addressed the level of knowledge required under 18 U.S.C. § 924(a)(1)(D) to establish that a defendant willfully violated the prohibition on dealing in firearms without a federal license. The Court held that § 924(a)(1)(D) required only knowledge that the conduct was unlawful. *See* 118 S.Ct. at 1947. In its discussion, the Court specifically distinguished "cases involving willful violation of the tax laws," in which "the jury must find that the defendant was aware of the specific provision of the tax code that he was charged with violating." *Id.* at 1946 (citing *Cheek,* 498 U.S. at 201, 111 S.Ct. 604). Because Congress intended the CSRA's willfulness standard to be interpreted in the same manner as the willfulness standard in the tax statutes, Mattice argues,

the government was required under *Bryan* to prove that he was aware of the specific federal criminal statute under which he was charged, *i.e.*, the CSRA, in order to establish that he acted willfully.

The tax cases to which the Court referred in *Bryan*, however, involved statutes that themselves prescribed the legal duty that the defendant was charged with violating. *See, e.g., Cheek*, 498 U.S. at 193, 111 S.Ct. 604 (interpreting 26 U.S.C. § 7201, which provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax *imposed by this title* or the payment thereof shall ... be guilty of a felony," and 26 U.S.C. § 7203, which provides that "[a]ny person *required under this title* to pay any estimated tax or tax ... who willfully fails to pay such estimated tax or tax ... shall ... be guilty of a misdemeanor") (emphases added). By contrast, the CSRA criminalizes the willful failure to pay a "past due support obligation," which is defined as

> any amount ... determined *under a court order or an order of an administrative process pursuant to the law of a State* to be due from a person for the support and maintenance of a child or of a child and the parent with whom the child is living ... that has remained unpaid for a period longer than one year, or is greater than $5,000.

18 U.S.C. § 228(d) (emphasis added). Thus, unlike the tax statutes, the CSRA does not itself prescribe the legal duty to pay child support. It simply refers to the relevant state court or administrative order imposing the support obligation and attaches criminal liability to any violation of that order that is willful. Because the. legal duty to pay child support arises from the order rather than the CSRA, it is the defendant's awareness of the order rather than the statute that is critical to the willfulness inquiry.

As the *Bryan* Court recognized, moreover, the tax cases "involved highly technical statutes that presented the danger of ensnaring individuals engaged in apparent-

ly innocent conduct." 118 S.Ct. at 1946–47. As a result, those statutes "require that the defendant have knowledge of the law." *Id.* at 1947. In the child support context, by contrast, the parameters of the legal duty to pay are clear from the face of the state court or administrative order imposing the support obligation. The failure to pay court-ordered child support is not "apparently innocent" conduct. There is thus no compelling reason to require that the defendant have knowledge of the particular federal criminal statute he is accused of violating.

These considerations persuade us that in order to prove that a defendant violated a "known legal duty" to pay child support, the government need only show that the defendant knew he was violating a state court or administrative order imposing a support obligation. This interpretation is consistent with cases in other circuits applying the Act's willfulness requirement. *See United States v. Brand*, 163 F.3d 1268, 1275 (11th Cir.1998) (finding sufficient evidence of willfulness where "the state court order expressly and unequivocally imposed a duty upon Brand to pay ... 'child support,'" "[t]he plain language of the state court order was ... sufficient to charge Brand with knowledge of his duty in this regard," "Brand's conduct ma[de] clear that he was aware of his support obligation," and "[n]otwithstanding his awareness of this obligation, Brand voluntarily and intentionally violated his duty to pay"); *United States v. Mathes*, 151 F.3d 251, 255 (5th Cir.) ("Applying *Cheek*'s definition of willfulness to this case, we conclude that substantial evidence supports the district court's conclusion that Mathes willfully failed to pay a past due support obligation. Mathes acknowledged at trial that he was aware of the Louisiana court's original March 22, 1992 judgment ordering Mathes's payment of child support as well as the May 30, 1995 judgment for arrearages."), *cert. denied*, —— U.S. ——, 119 S.Ct. 628, 142 L.Ed.2d 566 (1998); *Crawford*, 115 F.3d at 1407 ("[T]he evidence

showed that Crawford knew he had children and knew he was required to make support payments on their behalf pursuant to the Texas state court's orders.... There was ample evidence to support the inference that Crawford voluntarily and intentionally violated a known legal duty to pay past due child support.").

■ In this case, the government presented substantial evidence that in 1996 and 1997, the period charged in the indictment, Mattice knew he was violating his legal duty to pay child support under the 1978 and 1982 orders. Mattice was represented by counsel and submitted an affidavit in the 1978 separation proceeding. He was present in court when Justice Mastrella announced the terms of his order awarding $150 per week in temporary alimony and child support. Although Mattice did not appear in the subsequent divorce action, he was personally served with copies of the summons and verified complaint, which requested both future child support and a judgment of arrears due under the 1978 order. There was also evidence, based on the practice of Josephine Mattice's attorney, that a copy of the 1982 order requiring Mattice to pay $60 per week in child support was sent to his last known address. *See* Fed.R.Evid. 406 (evidence of routine practice relevant to prove action in conformity therewith). Josephine Mattice testified, credibly in the view of the magistrate judge, that she spoke to Mattice several times over the years regarding child support and specifically notified him that his child support obligations under the 1978 order had been reduced by the 1982 order. Mattice also received notice of these obligations by virtue of the fact that his wages were garnished in 1991 and 1992 after notice from his employer.

The magistrate judge discredited Mattice's testimony to the contrary. The magistrate judge stated, at the conclusion of the trial, that Mattice's testimony "lack[ed] any indicia of reliability or veracity," and that he disbelieved "[Mattice's] claim that he was unaware of his legal obligation in

1996 and 1997 to pay child support payments ... pursuant to previously entered court orders." At sentencing, the magistrate judge restated this finding in even stronger terms: "I just found your testimony that you had no idea that you were supposed to pay the support rings as false as any testimony I've heard in court." In light of this credibility determination and the other evidence presented at trial, especially when viewed in the light most favorable to the government, *see Gonzalez,* 110 F.3d at 940, we affirm the magistrate judge's finding that Mattice knew he was violating his legal duty to pay child support.

B. Ability to Pay

■ Mattice also contends that the government failed to prove that he was financially able to pay the entire amount past due under the 1978 and 1982 orders. He argues that in order to establish willfulness under the CSRA, the government must establish that the defendant had sufficient disposable income to pay his entire past due support obligation during the period charged in the indictment. We disagree.

■ The CSRA defines a "past due support obligation" as *"any* amount" determined under a state court or administrative child support order that has remained unpaid for more than one year or is greater than $5,000. *See* 18 U.S.C. § 228(d) (emphasis added). Congress's choice of "any amount," rather than "the amount," is significant. This language suggests that Congress intended to make partial failures to pay actionable under the CSRA, and that defendants who can pay some of their past due support obligations but fail to do so can be held liable under the Act. *See Mathes,* 151 F.3d at 254 ("[T]hat lesser amount fits the CSRA's definition of support obligation, which includes any amount due pursuant to court order that has remained unpaid for more than a year."). Indeed, if we were to read the CSRA as requiring proof that the defendant had

sufficient disposable income to pay his entire past due support obligation, we would significantly narrow the intended scope of the Act. As the Fifth Circuit Court of Appeals has observed,

> child support obligors would be able to insulate themselves from criminal liability by simply failing to make child support payments until the total amount past due is an amount that they are incapable of paying in one lump sum. Construing the CSRA so that it creates such a perverse incentive for extended nonpayment would surely flout Congress's purpose for enacting the statute: to remedy "the growing problem of interstate enforcement of child support by punishing certain persons who intentionally fail to pay their child support obligations."

*Id.* at 254 (quoting H.R. Report No. 102–771, at 4).

Mattice draws his main support for a contrary interpretation from the willfulness standard employed in the tax statutes. He points to a passage in the CSRA's legislative history, which notes that "[i]n order to establish willfulness under [the tax] provisions, the government must establish, beyond a reasonable doubt, that at the time payment was due the taxpayer possessed sufficient funds to enable him to meet his obligation." H.R.Rep. No. 102–771, at 6 (quoting *United States v. Poll,* 521 F.2d 329, 333 (9th Cir.1975)). The relevant "obligation" under the CSRA, however, is the obligation to pay "any amount" past due under a state court or administrative child support

order. An analogy to the tax statutes thus suggests that the government must demonstrate only that the defendant was able to pay *some* portion of his past due child support obligations in order to establish liability under the CSRA.[3]

■] We nevertheless agree with Mattice that if a defendant is unable to pay even some of his past due child support obligations, his failure to pay cannot be either voluntary or intentional and thus cannot be willful within the meaning of the CSRA. In fact, Congress has since codified this notion in the Deadbeat Parents Punishment Act of 1998, which provides that "[t]he existence of a support obligation that was in effect for the time period charged in the indictment or information creates a rebuttable presumption that the obligor has the ability to pay the support obligation for that time period." 18 U.S.C.A. § 228(b) (West Supp.1999); *see also* 143 Cong. Rec. S12667–01, S12667 (daily ed. Nov. 13, 1997) (explaining rebuttable presumption in Deadbeat Parents Punishment Act of 1998 and noting that "[a]lthough 'ability to pay' is not an element of the offense, a demonstration of the obligor's ability to pay contributes to a showing of willful failure to pay the known obligation"). A defendant's inability to pay any amount past due therefore provides a defense to liability under the Act, and the defendant is free to present evidence that during the period charged in the indictment, his income was not sufficient, after meeting his basic subsistence needs, to enable him to pay any portion of

---

**3.** Only one court has adopted Mattice's interpretation of the CSRA. In *United States v. Holbrook,* 15 F.Supp.2d 10, 19 (D.D.C.1998), Magistrate Judge Facciola granted the defendant's motion for judgment of acquittal based on the government's failure to prove that the defendant had sufficient disposable income to pay his entire past due child support obligation. The magistrate judge stated that his insistence on such proof was "perfectly consistent with the legislative history" of the CSRA, and cited various statements by the Act's supporters "unequivocally reject[ing] any intention to jail parents who cannot pay."

*Id.* at 18. He did not, however, address the Act's definition of "past due support obligation" as "any amount" past due under a state court or administrative child support order, but simply assumed that the statute required proof of the defendant's ability to pay the entire amount past due. In our view, the magistrate judge focused impermissibly on the legislative history of the CSRA to the exclusion of its plain language. *Cf. In re Olga Coal Co.,* 159 F.3d 62, 67 (2d Cir.1998) (noting that resort to legislative history is inappropriate when the meaning of a statutory provision is otherwise unambiguous).

the support obligation. The fact-finder then must weigh the evidence in the record as a whole and make a determination as to whether the government has established, beyond a reasonable doubt, that the defendant willfully failed to pay any amount past due under the relevant state court or administrative order imposing the support obligation.

■ In this case, the trial record contains ample evidence to support the magistrate judge's finding that "[w]hile [Mattice] may have been unable to pay all the past-due arrears, he was certainly able to contribute to his then due and owing child support obligations." The government introduced tax returns and Electrolux Corporation payroll documents for 1996 and 1997, the period charged in the indictment, which indicate that Mattice earned income of $19,275.24 in 1996 and $18,810.29 in 1997. *Cf. United States v. Black,* 125 F.3d 454, 466 (7th Cir.1997) (finding that defendant's declaration to IRS in federal tax returns that he had income for period charged in indictment, together with his nonpayment of child support during that period, "were clear evidence of his willfulness"), *cert. denied,* — U.S. —, 118 S.Ct. 1327, 140 L.Ed.2d 489 (1998); *Crawford,* 115 F.3d at 1407 (finding "ample evidence" to support inference that defendant voluntarily and intentionally violated a known legal duty to pay past due child support where government demonstrated at trial that defendant earned over $230,-000 during relevant time period). Mattice neither challenged this evidence nor presented any other documentary evidence suggesting that in 1996 or 1997, his income was insufficient, after meeting his basic subsistence needs, to enable him to pay any amount of his past due child support obligations. In fact, Mattice implicitly conceded that he was able to pay some portion of those obligations when he testified that he sent "considerable" sums of money to Josephine Mattice over the years and also sent money to his children. Although the magistrate judge discredited

Mattice's testimony that these sums were actually sent, that testimony undermines Mattice's contention that he could not pay any amount of his past due child support obligations. *Cf. Mathes,* 151 F.3d at 254 (concluding that defendant's "acknowledgment that he could have paid some amount toward his past due support obligation precludes his financial condition from serving as a bar to criminal liability").

We note that the Ninth Circuit Court of Appeals, in construing the willfulness requirement of the CSRA, has stated that

> [g]iven th[e] means-testing [that] is an integral aspect of every [state court] child support award, a non-custodial parent should never be confronted with a situation where he is ordered to make child support payments he cannot afford. A non-custodial parent who does not have the funds to satisfy the child support award, and who does not obtain a reduction or remission of the award because of inability to pay, will almost certainly be engaged in willful defiance of the state court's child support order.

*United States v. Ballek,* 170 F.3d 871, 873 (9th Cir.1999), *cert. denied,* — U.S. —, 120 S.Ct. 318, — L.Ed.2d — (1999). We need not decide under what circumstances, if any, the existence of a state court or administrative child support order would by itself be sufficient to establish a defendant's ability to pay his past due child support obligations under the CSRA. The totality of evidence presented at this trial, when viewed in the light most favorable to the government, *see Gonzalez,* 110 F.3d at 940, demonstrates that during the period charged in the indictment, Mattice could pay at least some of his past due child support obligations under the 1978 and 1982 orders but failed to do so. We therefore affirm his conviction under the CSRA.

## II. *Restitution*

Mattice also challenges the restitution component of his sentence. The CSRA provides that "[u]pon a conviction under

this section, the court shall order restitution under section 3663 in an amount equal to the past due support obligation as it exists at the time of sentencing." 18 U.S.C. § 228(c).[4] Magistrate Judge Feldman interpreted this language as requiring him to impose full restitution, which he determined to be $57,271.28. The magistrate judge also ordered full restitution on an alternative basis under 18 U.S.C. § 3663, which gives courts discretion to order restitution to any victim of a criminal offense. *See* 18 U.S.C. § 3663(a). We need not address whether the CSRA requires mandatory restitution because we conclude that the magistrate judge acted within his discretion by ordering Mattice to pay full restitution under § 3663.

 Section 3663(a)(1)(B)(i) provides that

[t]he court, in determining whether to order restitution under this section shall consider . . . the amount of the loss sustained by each victim as a result of the offense; and . . . the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such other factors as the court deems appropriate.

*See also United States v. Porter,* 90 F.3d 64, 67 (2d Cir.1996) (noting that "the sentencing judge must consider at least [these] three factors before restitution can be imposed"). Although "the record must demonstrate that the court has considered these factors in ordering restitution," *United States v. Broyde,* 22 F.3d 441, 442 (2d Cir.1994) (quoting *United States v. Tortora,* 994 F.2d 79, 81 (2d Cir.1993)), we have frequently stated that the court "need not make specific findings" with respect to each factor, *United States v. Conhaim,* 160 F.3d 893, 896 (2d Cir.1998); *see also United States v. Mortimer,* 52 F.3d

429, 436 (2d Cir.1995); *Broyde,* 22 F.3d at 442.

 Our review of the sentencing transcript reveals that Magistrate Judge Feldman not only considered each of the § 3663 factors, but also made the following specific findings:

I find th[e] amount [required for full restitution] to be $57,271.28. . . . Title 18 United States Code section 3663 allows the Court to take into consideration not only the financial situation of the defendant, but the future earning ability of the defendant. The defendant is employed full time. He has submitted letters from both the branch manager and the sales coordinator of his current employ[er]. They've written letters of reference for him and, in fact, the manager indicates that he is part of the store's success. The household—the defendant is married. The household has other income. His wife is an accountant, she is working full time. The defendant is fifty-two years old. Assuming he retires at sixty-five, he has over a decade of earning ability left.

As these findings demonstrate, the magistrate judge expressly considered the amount of loss sustained by Josephine Mattice, Mattice's financial "situation" and earning ability, and the earning ability of Mattice's current wife, Laura. In light of the magistrate judge's discussion of other household income provided by Laura Mattice, moreover, we are satisfied that the magistrate judge also considered Mattice's financial needs and those of his dependents. *See United States v. Giwah,* 84 F.3d 109, 114 (2d Cir.1996) (noting that the standard for reviewing a district court's consideration of the relevant factors is "extremely deferential").

---

4. The Deadbeat Parents Punishment Act of 1998 includes a "[m]andatory restitution" provision, which states that "[u]pon a conviction under this section, the court shall order restitution under section 3663A in an amount equal to the total unpaid support obligation as

it exists at the time of sentencing." 18 U.S.C.A. § 228(d) (West Supp.1999). Section 3663A requires courts to order "[m]andatory restitution to victims of certain crimes." 18 U.S.C. § 3663A.

██ "Once we are satisfied that [the § 3663] considerations have occurred, we review any findings resulting therefrom for clear error, as is generally the case in the sentencing context." *Porter*, 90 F.3d at 68. The magistrate judge found that the amount of the past due support obligation, and thus the amount of loss sustained by Josephine Mattice as a result of Mattice's failure to pay, was $57,271.28. Mattice argues that this amount does not reflect payments he sent his ex-wife that she did not report to the Child Support Enforcement Unit. In arriving at this amount, however, the magistrate judge specifically relied on the testimony of Josephine Mattice and Sherri Wood, the manager of the Child Support Enforcement Unit, as credible testimony as to the amount of the past due child support obligation. The magistrate judge therefore implicitly discredited Mattice's contrary testimony concerning child support payments he allegedly sent to Josephine Mattice over the years. The only "payments" that Josephine Mattice acknowledged receiving were $100 and two bicycles intended as Christmas gifts. According to Josephine Mattice and Wood, however, these were not reported to the Enforcement Unit because gifts are not properly considered child support. In light of this testimony and the magistrate judge's credibility determinations, we find no clear error in the magistrate judge's calculation of the amount of loss sustained by Mattice's ex-wife as a result of his offense. *See United States v. Conde*, 178 F.3d 616, at 620 (2d Cir.1999) ("In reviewing a sentence, we are to give due regard to the opportunity of the district court to judge the credibility of the witnesses, and we must accept its findings of fact unless they are clearly erroneous.") (citations and internal quotation marks omitted).

██ Finally, we conclude that the magistrate judge did not abuse his discretion by ordering Mattice to pay full restitution. *See Porter*, 90 F.3d at 68 ("A district court must be given latitude in the formation of restitution orders in order to protect the victim's interests. Accordingly, we review the district court's decision as to the proper amount of restitution and as to the proper payment schedule for abuse of discretion.") (citation omitted). As we have recognized, "the purpose behind 18 U.S.C. §§ 3663–3664 is to 'require full restitution wherever possible.'" *Id.* (quoting *United States v. Atkinson*, 788 F.2d 900, 903 (2d Cir.1986)). Indeed, "full restitution remains the norm, sparing the victims the need to get a separate civil judgment. When there is doubt about [the defendant's] ability to pay, the court should order full restitution." *Id.* (quoting *United States v. Ahmad*, 2 F.3d 245, 247 (7th Cir.1993)) (internal quotation marks omitted).

Mattice argues that the magistrate judge failed to consider his "rather severe financial circumstances" when he ordered Mattice to pay full restitution in the amount of $57,271.28. The fact that Mattice may have limited financial resources, however, "does not render the order of restitution an abuse of discretion." *Mortimer*, 52 F.3d at 436. "Even an indigent defendant may be subject to the duty to pay restitution when and if funds are eventually acquired." *Id.* The magistrate judge devised a reasonable payment schedule whereby Mattice was ordered to pay restitution of $70 per week ($20 per week for current child support and $50 per week towards arrears) during his period of supervised release, after which any outstanding restitution would become a judgment for which he would remain liable. *Cf. Porter*, 90 F.3d at 70 (affirming restitution order because district judge "devised an eminently reasonable payment schedule for the duration of [the defendant's] supervised release ... [and][t]hereafter, the statutory protections afforded judgment debtors will continue to insulate [the defendant] from overly draconian ramifications"). Under these circumstances, the magistrate judge's restitution order was a proper exercise of discretion.

## CONCLUSION

To establish that a defendant willfully failed to pay a past due child support obligation in violation of the CSRA, the government must prove that the defendant voluntarily and intentionally violated a known legal duty to pay child support. The government may satisfy the knowledge component of this standard by establishing that the defendant knew he was violating the state court or administrative order that imposed the support obligation at issue. Although a defendant's ability to pay a past due support obligation is relevant to whether the defendant acted willfully, the government need not establish that the defendant had sufficient disposable income to pay the entire amount past due. Rather, the government need only prove that the defendant could have paid some portion of the support obligation but failed to do so. If the defendant asserts his inability to pay as a defense, the trier of fact must then determine whether, in light of the evidence in the record as a whole, the defendant's income was insufficient, after meeting his basic subsistence needs, to enable him to pay any portion of his past due support obligation.

In this case, the evidence established that during the period charged in the indictment, Mattice knew he was violating his legal duty to pay child support under the 1978 and 1982 orders, had the ability to pay at least some portion of his past due support obligation and failed to do so. We therefore affirm his conviction for willful failure to pay a past due support obligation in violation of the CSRA. We also affirm that part of Mattice's sentence ordering him to pay full restitution.