# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 6, 2010

No. 09-11190

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JESUS FRANCISCO CHAVEZ-SALGADO; REYMUNDO RENDON-ALVARADO; JOSE SANCHEZ,

Defendants - Appellants

Appeal from the United States District Court
for the Northern District of Texas
Case No. 4:09-CR-079-1

Before HIGGINBOTHAM, CLEMENT, and OWEN, Circuit Judges.

PER CURIAM.[*]

Defendant-Appellants Jesus Chavez-Salgado (Chavez), Reymundo Rendon-Alvarado (Rendon), and Jose Sanchez (Sanchez) were convicted by a jury of conspiring to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846 and were sentenced to 121 months, 188 months, and 135 months of imprisonment, respectively. Appellants assert several errors by the district court, all contending that the government failed to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-11190

present sufficient evidence to prove the drug quantity alleged by the government.[1]

Appellants also argue that the district court clearly erred in determining, for sentencing purposes, that appellants' offense involved more than five kilograms of cocaine. Rendon argues that the district court erred in increasing the base level of his offense by two levels pursuant to § 3B1.1(c) based on his role in the offense. Finally, Chavez argues that the district court erred by refusing to give his requested jury instruction that would have required the government to prove Chavez knew he conspired to possess more than five kilograms of cocaine with intent to distribute. We disagree and affirm.

## I. BACKGROUND

After receiving citizen complaints that the owner and employee of a tire business in Fort Worth were engaged in drug activity, the Fort Worth Police Department conducted an investigation where two undercover officers, Officer Eric Martinez and Officer Jesus Cisneros, posed as high-level narcotics traffickers. On April 21, 2009, Officers Martinez and Cisneros arrived at the tire business carrying a "concealment mold," used by drug traffickers to hide contraband. Upon arrival, the officers encountered Chavez and asked for the owner of the property. Chavez informed the officers that the owner was not present, and inquired as to why the officers were looking for him. Officer Martinez told Chavez that he had ten kilograms of cocaine to ship to Kentucky and that he needed help concealing drugs in a tire. Officer Martinez also showed him the concealment mold. Chavez informed Officer Martinez that he had buyers in Fort Worth and Dallas who would be willing to buy the same amount,

---

[1] Specifically, Appellants each argue the district court erred in denying their motions for judgments of acquittal, made both at the close of the government's case-in-chief and at the close of all evidence. Sanchez argues the district court erred in denying his post-verdict joint motion for acquittal and for new trial. Chavez argues the district court erred in submitting to the jury the question of whether the conspiracy involved more than five kilograms of cocaine.

2

ten kilograms, and inquired as to the quality and the price of the cocaine Martinez was selling. Officer Martinez and Chavez exchanged telephone numbers and the officers left the tire business.

Subsequent to the initial meeting, Chavez phoned Officer Martinez to inquire whether Martinez had received more cocaine or expected to receive more. The two exchanged several phone calls over the next several days. A few days later, Officers Martinez and Cisneros met with Chavez, who told Officer Martinez he had a buyer for ten kilograms of cocaine and asked to check the quality of the cocaine. After traveling to a warehouse, Officer Martinez offered two cellophane-wrapped kilograms of cocaine to Chavez for inspection. Chavez asked Officer Martinez to cut open the package, which he did, and Chavez smelled the cocaine. Officer Martinez told Chavez the remaining eight kilograms of cocaine were still inside the vehicle, and that they would not be removed until the officers were sure that Chavez's group had the money to pay for the drugs. Chavez assured the officer that his group in Dallas had sufficient money and the men parted ways.

A few days later, Chavez called Officer Martinez to tell him the Dallas group did not have sufficient money to complete the transaction. Later, Chavez called Officer Martinez and said he had a different buyer out of Dallas who also wanted ten kilograms, but only had enough cash for five kilograms. Chavez asked Officer Martinez if he would be willing to trade vehicles for the other five kilograms. Officers Martinez and Cisneros and Chavez met at Chavez's home to view the vehicles. When the officers arrived, however, there was only one vehicle at the home. Sanchez was also present and was introduced to the officers as "Chino." Sanchez told Officer Martinez he was working for a man in Dallas who wanted ten kilograms of cocaine. Chavez also told the officers that Sanchez was there to represent the owner of the vehicles from Dallas. Sanchez also told the officers that the group had money for five kilograms, and were willing to trade

3

vehicles for the other five kilograms. Sanchez also asked about the quality of the cocaine and asked to take one kilogram for testing, but the officers refused and ended the meeting.

As the officers drove back to their office, Chavez called Officer Martinez and asked him to continue negotiations. Officer Martinez agreed, and the officers again met with Chavez and Sanchez. Chavez and Sanchez were persistent in their request to take one kilogram of cocaine for testing, and Sanchez said he would return and purchase the other nine kilograms if the cocaine was of an acceptable quality. Officer Martinez refused and the negotiations ended.

Five days later, Chavez called Officer Martinez and said he had cash sufficient to buy five kilograms of cocaine and vehicles in his possession. Officers Martinez and Cisneros and two other undercover officers drove to Chavez's house. Sanchez was there, and handed over titles to three vehicles parked at the residence. Sanchez told Officer Martinez that his boss was parked at a nearby park, and asked for a sample kilogram of cocaine to take to the boss. Officer Martinez again refused to release any cocaine until seeing the money. After an argument with Officer Martinez, Sanchez used the phone, and then agreed to take Martinez to see the money. Officer Martinez, Officer Cisneros, and Sanchez then drove to the park. The parties were alarmed by a suspicious truck in the parking lot.[2] A few minutes later, a different truck pulled next to the trio, carrying Rendon as a passenger.[3] After all the parties exited the vehicles, Officer Martinez again asked to see the money. Rendon agreed to show Officer Martinez the money, and motioned to the driver of the truck to open its hood. Rendon pointed to a bag lodged between the truck battery and the frame of the truck,

---

[2] In actuality, the suspicious truck was a Bureau of Alcohol, Tobacco, and Firearms (ATF) rescue team.

[3] The driver of the truck, Mario Barrera-Luna, was found not guilty at trial.

and Officer Martinez was able to see United States currency in the bag.[4] At some point during the meeting at the park, Officer Martinez told Rendon that "[w]hat made you look bad is working with [Chavez]." Rendon replied, "I don't know [Chavez] or what happened." The driver of the truck then said, in Spanish, "it's hot here," which Officers Martinez and Cisneros took to mean that he thought it was too dangerous to continue the transaction at the park. The parties agreed to complete the transaction at Chavez's house. Upon their return to Chavez's house, Officer Martinez and Rendon exited the vehicle and began talking in front of the residence. Prior to exiting, Officer Martinez gave the prearranged arrest signal and  arrest teams from the ATF and the Fort Worth Police Department took the men into custody.

Chavez, Rendon, and Sanchez were each indicted on a single count of conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) and 841(b)(1)(A). At trial, the government called only two witnesses, Officers Martinez and Cisneros.[5] At the close of the government's case-in-chief, Appellants moved for a judgment of acquittal, arguing that there was no evidence of any agreement by the Appellants, and also no evidence that Appellants agreed to distribute more than five kilograms of cocaine. The district court denied the motion. Chavez called two character witnesses in his defense. Rendon, Sanchez, and Barrera-Luna called no witnesses. At the close of all evidence, the district court denied a second motion for acquittal. Chavez and Sanchez also objected to the court submitting

---

[4] A subsequent search of the bag revealed that it contained $29,910. Officer Martinez testified that, by sight, he did not believe the bag contained enough money for all ten kilograms, but contained enough for five kilograms.

[5] Officer Cisneros testified only very briefly before Sanchez objected to his testimony as cumulative. The court did not explicitly rule on Sanchez's objection, but indicated its belief that there was no need to have Cisneros testify to the same facts as Officer Martinez had. The government asked two additional questions and ended its examination. None of the defendants cross-examined Officer Cisneros.

to the jury the issue of whether the conspiracy involved more than five kilograms of cocaine.[6] The judge overruled the objection. The jury convicted Chavez, Rendon, and Sanchez of the charge listed in the indictment, conspiring to possess with intent to distribute more than five kilograms of cocaine. Post-verdict, the district court denied Sanchez's joint motion for acquittal and for new trial.

At sentencing, Rendon and Chavez objected to the use of ten kilograms of cocaine to calculate their sentences, arguing that the amount attributed to each should be less than five kilograms.[7] The district court overruled their objections, specifically noting that the jury had found the amount of cocaine attributable to the conspiracy was more than five kilograms. Rendon additionally objected to the application of an adjustment to the base level of his offense of two levels due to his role as a supervisor in the conspiracy under U.S.S.G. § 3B1.1(c). The district court also overruled this objection. The district court imposed a 121-month term of imprisonment as to Chavez, 135 months as to Sanchez, and 188 months as to Rendon. Appellants timely appealed.

## II. ANALYSIS

**A.    Sufficiency of the Evidence to Support the Cocaine Conspiracy Conviction**

### 1.    Standard of Review

A motion for a judgment of acquittal is a challenge to the sufficiency of the evidence. *United States v. Moreno*, 185 F.3d 465, 470 (5th Cir. 1999). Appellants

---

[6] The government and Rendon disagree as to whether Rendon properly objected to the district court's submission to the jury of the greater-than-five kilogram charge. In light of the ultimate disposition of this appeal, however, we need not address this issue.

[7] Sanchez did not object to the district court's calculation of his guidelines range, but contends that his motions for acquittal and a new trial sufficiently preserved the objection. The government disagrees, and argues Sanchez waived any error as to the quantity of cocaine for sentencing purposes. In light of the ultimate disposition of this appeal, however, we need not address this issue.

moved for a judgment of acquittal at the close of the government's case, renewed the motion at the close of all evidence, and Sanchez renewed the motion again after the jury verdict. Therefore, their challenge to the sufficiency of the evidence is preserved for de novo appellate review. See FED. R. CRIM. P. 29(a), (c)(1); *United States v. Izydore,* 167 F.3d 213, 219 (5th Cir. 1999). This court reviews the denial of a motion for new trial under an abuse of discretion standard. *United States v. O'Keefe*, 128 F.3d 885, 893 (5th Cir. 1997). "This standard is necessarily deferential to the trial court because we have only read the record, and have not seen the impact of witnesses on the jury or observed the demeanor of the witnesses ourselves, as has the trial judge." *Id.* "Although grant or denial of the motion is entrusted to the sound discretion of the judge, motions for new trial are not favored, and are granted only with great caution." *Id.* at 897.

As to Appellants' related argument that the district court improperly submitted to the jury the issue of whether the conspiracy involved more than five kilograms of cocaine, "we must first decide whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them". *United States v. Mendoza-Medina*, 346 F.3d 121, 132 (5th Cir. 2003) (quotations omitted). The trial court's charge must not only be "legally accurate, but also factually supportable"; "the court may not instruct the jury on a charge that is not supported by evidence." *Id.* (quotations omitted). "In assessing whether the evidence sufficiently supports the district court's charge, we view the evidence and all reasonable inferences that may be drawn from the evidence in the light most favorable to the Government. Any error is subject to harmless error review." *Id.* (quotations omitted).

2.      Discussion

"To prove that a defendant is guilty of conspiring to distribute illegal drugs under 21 U.S.C. § 846, the Government must prove beyond a reasonable doubt:

(1) the existence of an agreement between two or more persons to violate narcotics laws, (2) knowledge of the conspiracy and intent to join it, and (3) voluntary participation in the conspiracy." *United States v. Turner*, 319 F.3d 716, 721 (5th Cir. 2003). In this case, the indictment alleges a conspiracy involving the distribution of a quantity greater than five kilograms of cocaine, an amount that triggers a statutory minimum penalty of ten-years imprisonment. Therefore, a fourth element applies, and the government must prove the drug quantity alleged in the indictment beyond a reasonable doubt. *Id.* at 722.

At trial, Appellants argued that the government did not prove the existence of an agreement between them sufficient for a conviction under § 846. On appeal, however, Appellants do not challenge the government's proof as to the first three elements of § 846, but rather argue that the government failed to prove that the conspiracy involved more than five kilograms of cocaine—put more simply, Appellants do not dispute that they conspired to sell cocaine, but argue they never agreed to sell more than five kilograms of cocaine. Having reviewed the record, we disagree, and hold that the evidence before the jury was sufficient to support the verdict.

As Chavez concedes in his brief, the evidence at trial showed Chavez and Sanchez each represented to the officers that they had an agreement between themselves to purchase ten kilograms of cocaine from the officers. While Appellants argue that, in fact, they had no such agreement, our review is "limited to whether the jury's verdict was reasonable, not whether we believe it to be correct." *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001). Chavez and Sanchez's representations to the officers support the jury's conclusion.

Officer Martinez's testimony and transcripts of audio recordings[8] of conversations between the Appellants and the undercover officers also support the jury's verdict. While Appellants make much of the fact that Officer Martinez is apparently the only person to definitively use the words "ten kilograms" on the audio recordings, "[t]he agreement and the defendant[s'] knowledge and participation in the conspiracy may be inferred from the development and collocation of circumstances." *United States v. Hayes*, 342 F.3d 385, 390 (5th Cir. 2003) (quotations omitted). Appellants seize on portions of the audio transcript that, in their view, demonstrate that they were not going to be able to consummate a deal for ten kilograms. But the audio transcripts are not the only evidence of conversations between Appellants and the undercover officers—indeed, several conversations were not recorded. Officer Martinez testified that the parties, specifically Chavez and Sanchez, agreed to a ten-kilogram transaction. While Appellants advanced at trial that the $29,100 and the five vehicles offered in exchange for the cocaine are more consistent with their theory that the agreement was to buy an amount less than ten kilograms, Officer Martinez testified that the vehicles were offered in good faith to reassure the officers that the ten-kilogram transaction would be completed.

Appellants' intimation that they only intended to take possession of less than five kilograms of cocaine on the day they were arrested is largely irrelevant[9]—an inchoate crime such as conspiracy only requires the conspiracy to be proven, "it is not necessary to show completion of the objective of that inchoate crime." *United States v. Rey*, 641 F.2d 222, 224 n.6 (5th Cir. 1981 Unit

---

[8] Transcripts were used because the conversations between the relevant parties were all conducted in Spanish.

[9] To the extent Appellants argue that they did not have the resources to purchase ten kilograms of cocaine, "factual impossibility does not preclude a conviction for conspiracy or attempt." *United States v. Burke,* 431 F.3d 883, 886 (5th Cir. 2005).

A). Moreover, even assuming *arguendo* that Appellants did only intend to purchase less than five kilograms of cocaine on the day they were arrested, we have held that piecemeal transactions of smaller amounts can be aggregated to define the total amount of drugs attributable to a conspiracy. *See, e.g., Turner,* 319 F.3d at 724 ("Because Jiminez dealt in one-kilogram quantities only, any additional request by Robinson of Jiminez would have pushed the total drug quantity involved in the conspiracy over five kilograms. . . . the inference that more than five kilograms were involved is reasonable."). Thus, while Rendon in particular points to portions of the audio transcripts suggesting that he only intended to purchase two kilograms of cocaine, Officer Martinez testified that Rendon was to purchase two kilograms on a specific day, not only two kilograms of cocaine in total. Viewing the evidence in the light most favorable to the Government, the inference that more than five kilograms were involved in the conspiracy is reasonable. As such, neither the district court's denial of Appellants' motions for acquittal nor Sanchez's motion for new trial was in error.

**B.    Attributing More Than Five Kilograms of Cocaine for Sentencing Purposes**

"A district court's findings about the quantity of drugs implicated by the crime are factual findings reviewed under the clearly erroneous standard." *United States v. Young,* 981 F.2d 180, 185 (5th Cir. 1992) (quotations omitted). "Such fact findings are not clearly erroneous if they are plausible in light of the record as a whole." *Turner,* 319 F.3d at 724 (quotations omitted). "The sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range." *United States v. Mares*, 402 F.3d 511, 519 (5th Cir. 2005). Appellants acknowledge that their argument that the district court clearly erred in determining that their offenses involved ten kilograms of cocaine turns on the success of the failed sufficiency of the evidence argument advanced above. For the same reasons

10

discussed above, we hold that the district court did not clearly err in attributing ten kilograms to each appellant.[10]

## C.    Applying the Role Adjustment to Rendon

"A district court's interpretation and application of the [Sentencing] Guidelines is reviewed *de novo* and its factual determinations are reviewed for clear error." *United States v. Rhine,* 583 F.3d 878, 884 (5th Cir. 2009). The district court applied a two-level increase to Rendon's base level of 32 based on his role in the offense under § 3B1.1(c) of the Sentencing Guidelines. Under that section, "[b]ased on the defendant's role in the offense, increase the offense level as follows: . . . [i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity [not involving five or more participants or otherwise extensive] increase by 2 levels."   U.S. SENTENCING GUIDELINES MANUAL § 3B1.1(c). The presentence investigation report (PSR) stated that Rendon "directed the activities of Sanchez," and that, therefore, a two-level increase pursuant to § 3B1.1(c) was warranted. The PSR, mirroring the testimony offered at trial, found that Sanchez "stated he worked for an individual in Dallas, later identified as Rendon-Alvarado, who was interested in purchasing 10 kilograms of cocaine" and that Sanchez wanted to "purchase 1 kilogram of cocaine to show his boss." Furthermore, the PSR found that "Sanchez stated [to Officer Martinez that] his boss had the money at the city park . . . nearby" and that Rendon met Sanchez and Officer Martinez at the park a short time later. Rendon objected to the PSR and argued that the evidence did not show he directed Sanchez's activities. At the sentencing hearing, the district

---

[10] We note that, for sentencing purposes, there is no difference between a finding that an offense involved five or ten kilograms of cocaine. *See* U.S. SENTENCING GUIDELINES MANUAL § 2D1.1(c)(4) (explaining that if the offense involved "at least 5 KG but less than 15 KG of Cocaine," the base offense level is 32).

No. 09-11190

court overruled Rendon's objection and applied the two-level increase "based on the facts recited in the [PSR]."

The district court did not clearly err when factually determining that Sanchez was acting at Rendon's direction. "To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants." U.S. SENTENCING GUIDELINES MANUAL § 3B1.1 cmt. n.2 (2009). In light of the district court's factual findings, we hold that the district court did not err in applying a two-level increase to Rendon's base offense level based on his role in the conspiracy.[11]

**D.    The District Court's Failure to Instruct the Jury on Mens Rea for the Drug Quantity Alleged in the Indictment**

Finally, Chavez argues that the district court erred by refusing to give his requested jury instruction that required the government to prove mens rea as to the drug quantity alleged in the indictment. As Chavez acknowledges, this argument is foreclosed by *United States v. Gamez-Gonzalez*, 319 F.3d 695 (5th Cir. 2003). Chavez argues that the Supreme Court's recent decision in *Flores-Figueroa v. United States*, ___ U.S. ___, 129 S. Ct. 1886 (2009), strips *Gamez-Gonzalez* of its binding force, but concedes that we have rejected this argument. *See United States v. Betancourt*, 586 F.3d 303, 309 (5th Cir. 2009) ("*Flores-Figueroa* did not overturn *Gamez-Gonzalez,* and the Government did not need to prove beyond a reasonable doubt that [Appellant] knew the type and quantity of drugs . . . ."). Accordingly, Chavez's argument is foreclosed by court precedent and we need not discuss it further.

---

[11] At Rendon's sentencing hearing, an agent from the Drug Enforcement Administration testified that Rendon was identified by an unrelated investigation as being a member of a Dallas-based cell of La Familia, a Michoacan, Mexico, based drug cartel, and was known as "General." We note that the district court applied the role-based adjustment before this testimony.

12

No. 09-11190

## III. CONCLUSION

For the foregoing reasons, we conclude that there was sufficient evidence to show that Appellants were involved in a conspiracy to distribute more than five kilograms of cocaine and that the district court did not clearly err in attributing ten kilograms of cocaine to each Appellant for purposes of sentencing. Nor did the district court clearly err in applying a two-level increase to Rendon's base offense level based upon his role in the offense. Finally, the district court did not err in declining to give Chavez's requested jury instruction as to mens rea. We therefore AFFIRM.