# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 5, 2022

Lyle W. Cayce
Clerk

No. 21-50428
Summary Calendar

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

CHRISTOPHER LAMAR HEARST,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:21-CR-25-1

Before HIGGINBOTHAM, HIGGINSON, and DUNCAN, *Circuit Judges*.

PER CURIAM:*

A jury convicted Christopher Lamar Hearst of conspiracy to possess with intent to distribute five grams or more of actual methamphetamine, and the district court imposed a sentence of 210 months in prison to be followed by eight years of supervised release. Hearst now appeals his conviction and

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

sentence, arguing that (1) there was insufficient evidence to support his conviction and (2) the district court erred in calculating the drug quantity used for sentencing purposes.

We review preserved challenges to the sufficiency of the evidence de novo, *see United States v. Grant*, 683 F.3d 639, 642 (5th Cir. 2012), which requires consideration of the evidence presented in the light most favorable to the Government to determine whether a rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt, *see United States v. Lopez-Moreno*, 420 F.3d 420, 437-38 (5th Cir. 2005). In order to sustain a conviction for conspiracy to possess with intent to distribute a controlled substance, the Government was required to prove that (1) an agreement existed between two or more persons to violate the applicable narcotics laws, (2) Hearst knew of the agreement, and (3) Hearst voluntarily participated in the agreement. *See United States v. Franklin*, 561 F.3d 398, 402 (5th Cir. 2009). Moreover, because the quantity of drugs involved subjected Hearst to an enhanced penalty, the Government also had to prove that the conspiracy involved at least five grams of actual methamphetamine. *See United States v. Turner*, 319 F.3d 716, 721-22 (5th Cir. 2003).

Hearst does not dispute the existence of a conspiracy or that he knew of and voluntarily agreed to participate in the conspiracy; accordingly, he has abandoned those issues on appeal. *See United States v. Harrison*, 777 F.3d 227, 236 (5th Cir. 2015); *Yohey v. Collins*, 985 F.2d 222, 225 (5th Cir. 1993). However, he does argue that the Government did not prove that the controlled substance involved in the conspiracy was actual methamphetamine or that the drug quantity was at least five grams. Contrary to Hearst's assertions, the record contains sufficient direct and circumstantial evidence to establish that the conspiracy involved at least five grams of actual methamphetamine.

No. 21-50428

First, there is no requirement that the Government had to actually seize the quantity of drugs alleged to be involved. *See United States v. Turner*, 319 F.3d 716, 722-23 (5th Cir. 2003). Second, the jury could extrapolate the purity rate from samples. *See United States v. McClaren*, 13 F.4th 386, 411 (5th Cir. 2021) (noting that the jury could use testimony to extrapolate drug quantity), *petition for cert. filed* (Feb. 9, 2022) (No. 21-7078). The evidence reveals that in a post-*Miranda*[1] statement, Hearst admitted to obtaining at least 35 grams of methamphetamine from his supplier to give to his co-defendant, Brenda Leigh Kirk. Testimony from law enforcement officials revealed that the prevailing purity of the methamphetamine seized in the area during that time period was between 90 and 95 percent, and the tested purity rates of two samples of methamphetamine seized from Kirk and one of her customers were 93 and 97 percent.

In weighing the evidence, the jury's ability to infer is governed by "a rule of reason," and the jury is permitted to use its common sense and evaluate the facts in light of its knowledge of the common tendencies and inclinations of human nature. *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir. 1989); *see also United States v. Mendoza*, 226 F.3d 340, 343 (5th Cir. 2000) (noting that the elements "may be inferred from the development and collocation of circumstances" (internal citations and quotations omitted)). According to testimony from law enforcement officials, in order to determine the amount of actual methamphetamine, the purity of the substance confiscated is multiplied by the total weight of the substance. Using this equation, even if the jury inferred that the purity of the methamphetamine involved in the conspiracy was only 90 percent, the evidence was sufficient for the jury to find that Hearst conspired to possess with the intent to

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

distribute at least five grams of actual methamphetamine. *See Lopez-Moreno*, 420 F.3d at 437-38.

Regarding drug quantity for sentencing purposes, Hearst argues that the district court erred in attributing 80 grams of actual methamphetamine to him because it improperly relied on the uncorroborated statements of Kirk, who was not credible. The district court's determination of the quantity of drugs attributable to a defendant is a factual finding that we review for clear error. *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005).

The presentence report (PSR) generally has sufficient indicia of reliability, and in the absence of rebuttal evidence, a sentencing court may rely on the PSR and adopt it without further explanation. *United States v. Alaniz*, 726 F.3d 586, 619 (5th Cir. 2013). Furthermore, when determining drug quantity, the district court can rely on statements from a co-conspirator, even if those statements are "somewhat imprecise" or contain "estimates." *United States v. Lucio*, 985 F.3d 482, 487 (5th Cir.), *cert. denied*, 142 S. Ct. 177 (2021); *see also United States v. Gentry*, 941 F.3d 767, 791 (5th Cir. 2019), *cert. denied*, *Bounds v. United States*, 140 S. Ct. 2731 (2020).

Here, the district court adopted the PSR without change. Aside from his own unsworn assertions that Kirk's drug quantity estimates were unreliable, Hearst does not provide any concrete evidence to rebut the presumption of reliability afforded the information in the PSR. *Betancourt*, 422 F.3d at 248. Moreover, we afford due deference to any credibility determinations the district court made regarding Kirk's statements. *See United States v. Kearby*, 943 F.3d 969, 975 n.4 (5th Cir. 2019), *cert. denied*, 140 S. Ct. 2584 (2020). Accordingly, the district court's findings regarding the drug quantity attributable to Hearst are "plausible in light of the record as a whole." *Betancourt*, 422 F.3d at 246 (internal quotation marks and citation omitted). The judgment of the district court is AFFIRMED.